OPINION
{¶ 1} Appellee-appellant, Ohio Liquor Control Commission ("Commission"), appeals from the June 10, 2002 decision of the Franklin County Court of Common Pleas reversing the order of the Commission imposing a $10,000 fine or 100-day suspension against appellant-appellee, Louise Hodge Weller Merritt dba Lulu's Tap Room. For the reasons that follow, we reverse the decision of the trial court.
 {¶ 2} The Ohio Department of Public Safety, the Cincinnati Police Department, and the Hamilton County Sheriff's Office had been investigating the Child Care Foundation, Inc. ("Child Care") for 11 months. Child Care was allegedly operating under the guise of a 501(C)(3) charity and was distributing tip tickets in the Cincinnati area. Apparently, certain permit holders and Child Care would split the proceeds from the sale of tip tickets without the charity receiving the proper monies. The permit holder would receive two boxes of tip tickets: profits from the first box of tip tickets would be returned to Child Care, while the profits from the second box, sold under the guise of a charity, would be retained by the permit holder. Investigators compiled a list of permit premises that were distributing tip tickets under Child Care. Lulu's Tap Room was one of the permit premises under investigation.
 {¶ 3} On October 25, 2000, agents of the Ohio Department of Liquor Control entered appellee's permit premises. The agents reported their observations in an "Enforcement Investigative Report." The agents observed four plastic containers behind the bar that contained different brands of tip tickets, several patrons of the bar playing tip tickets, and a sign posted on the back wall of the bar that read "Child Care Foundation." One of the agents purchased a total of eight tip tickets from the barmaid, none of which were winning tickets.
 {¶ 4} On November 29, 2000, agents entered the permit premises to conduct an inspection of the premises. Upon entering, the agents observed two plastic containers with tip tickets with signs posted indicating the various payouts for the different tip tickets, along with a garbage can filled with spent winning tip tickets. The agents' investigative report described tip tickets as "a scheme of chance with the purchase price of one dollar, the odds of winning, and the winning prize amounts indicated on the front of the tickets."
 {¶ 5} As a result of their observations, the agents issued appellee two violation notices. The first notice alleged the following two violations of Regulation 53:
 {¶ 6} "Violation #1: On or about October 25, 2000, you and/or employee and/or your agent KELLI WILLIAMSON and/or SHEILA ABAD and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, TIP TICKETS, in violation of Regulation 4301.1-1-53, Ohio Admin.Code.
 {¶ 7} "Violation #2: On or about October 25, 2000, you and/or employee and/or your agent KELLI WILLIAMSON and/or SHEILA ABAD and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, PAY-OFF ON SCHEME OF CHANCE, in violation of Regulation 4301.1-1-53, Ohio Admin.Code."
 {¶ 8} The second violation notice alleged the following three violations of Regulation 53:
 {¶ 9} "Violation #1: On or about November 29, 2000, you and/or employee and/or your agent KELLI WILLIAMSON and/or LOISE [sic] WELLER MERRITT and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, tip tickets, in violation of Regulation 4301.1-1-53, Ohio Admin.Code.
 {¶ 10} "Violation #2: On or about November 29, 2000, you and/or employee and/or your agent KELLI WILLIAMSON and/or LOISE [sic] WELLER MERRITT and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, PAY OFF RECORDS, in violation of Regulation 4301.1-1-53, Ohio Adm.Code.
 {¶ 11} "Violation #3: On or about November 29, 2000, you and/or employee and/or your agent KELLI WILLIAMSON and/or LOISE [sic] WELLER MERRITT and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, RAFFLE, in violation of Regulation 4301.1-1-53, Ohio Admin.Code."
 {¶ 12} A hearing on the violations was held on June 20, 2001, at which time appellee stipulated to the investigative report, but entered a denial of the charges. By order dated July 10, 2001, the Commission found appellee in violation of Ohio Adm. Code 4301:1-1-53, and gave appellee the option to either pay a $10,000 forfeiture or serve a 100-day suspension. Appellee appealed the decision of the Commission to the Franklin County Court of Common Pleas. The trial court determined that the order was not supported by reliable, probative and substantial evidence, and reversed the order of the Commission. It is from this entry that the Commission appeals, assigning a single error:
 {¶ 13} "The lower court erred and committed reversible error when it incorrectly interpreted R.C. 119.12 and the court's role thereunder by substituting its judgment for the judgment of the Ohio Liquor Control Commission."
 {¶ 14} The Commission has appealed pursuant to R.C. 119.12. R.C.119.12 provides the following standard of review for the common pleas court:
 {¶ 15} "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *"
 {¶ 16} In Our Place, Inc. v Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571, the Ohio Supreme Court defined the evidence required by R.C. 119.12 as:
 {¶ 17} "(1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value. [Fn. omitted.]"
 {¶ 18} "The appellate court's review is even more limited than that of the trial court. While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. An appellate court does not determine the weight given to the evidence heard before an agency in proceedings on appeal in a lower court. Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn. (1992),63 Ohio St.3d 705. On an appeal pursuant to R.C. 119.12, an appellate court shall review evidentiary issues to determine whether the common pleas court abused its discretion in determining whether or not the agency decision was supported by reliable, probative and substantial evidence. Id. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 19} Thus, this court's standard of review is limited to whether the trial court abused its discretion in finding the Commission's order was not supported by reliable, probative and substantial evidence or that it was not in accordance with law.
 {¶ 20} In this case, the Commission contends that there was overwhelming evidence that appellee allowed gambling at the permit premises. The Commission argues that, since appellee stipulated to the admission of the facts in the investigative report, that appellee acknowledged that a profit was received and that the permit holder did not comply with the charitable exception of Regulation 53. The trial court determined that there was no evidence that appellee knew that the tip ticket sales were illegal. The trial court noted that information retrieved from a "black book" that was taken from the permit premises was not enough evidence to find that appellee received a profit from the tip ticket sales.
 {¶ 21} The quantum of evidence to support a violation of Ohio Adm. Code 4301:1-1-53 is a preponderance of the evidence. VFW Post 8586 v. Ohio Liquor Control Comm. (1998), 83 Ohio St.3d 79, 81. Ohio Adm. Code4301:1-1-53(B) states:
 {¶ 22} "No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code."
 {¶ 23} R.C. 2915.01(F)(2) defines a "gambling device" in pertinent part as:
 {¶ 24} "A ticket, token, or other device representing a chance, share, or interest in a scheme of chance, except a charitable bingo game, or evidencing a bet [.]"
 {¶ 25} R.C. 2915.02(A)(2) defines "gambling device," in part, as:
 {¶ 26} "No person shall do any of the following:
 {¶ 27} "* * *
 {¶ 28} "(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit [.]"
 {¶ 29} We find that the stipulated evidence introduced before the Commission was sufficient to find that appellee committed the charged violations, and that the trial court abused its discretion in reversing the order of the Commission. The Commission may draw inferences based on the evidence before it. VFW Post 8586, supra. Appellee purchased and sold tip tickets. Tip tickets constitute gambling devices within the definition of R.C. 2915.01(F)(2). See Hurt v. State Liquor Control Comm. (Nov. 26, 1997), Montgomery App. No. 16232, dismissed, appeal not allowed (1998), 81 Ohio St.3d 1467 (finding that a tip ticket is a "gambling device" within the statutory definition and also under the administrative rule); Weller v. Ohio Liquor Control Comm., Franklin App. No. 02AP-333, 2002-Ohio-6308, at ¶ 18 (concluding tip tickets constitute gambling devices within the meaning of R.C. 2915.01[F][2]); Columbus v. I.O.R.M., Sioux Tribe-Redman Club (1993), 88 Ohio App.3d 215, 216 (finding that tip tickets are "gambling devices which when opened may reveal a symbol indicating that the purchaser has won money").
 {¶ 30} In this case, the Commission collected evidence, including "Instant Control" receipts, which documented that from July 2000 to November 2000, Lulu's Tap Room's profits from the tip ticket sales amounted to $11,528. Additionally, on November 20, 2000, Agent K. Scherer interviewed appellee. During that interview, appellee indicated that 15 percent of the proceeds retained from the sale of the tip tickets was the legal amount designated by law that the permit premises could retain for operational expenses. Agent Scherer testified that based on her interview with the salesmen of the tip tickets, she concluded that appellee participated in the sale of the two-box tip ticket deal as the other permit holders in the Cincinnati area. (Tr. 8.) The Commission could have reasonably concluded that appellee retained up to 50 percent of the profit. See VFW Post 8586.
 {¶ 31} Moreover, there is no evidence that appellee qualified as an exempt organization from gambling prohibitions under R.C. 2915.02(D), which provides:
 {¶ 32} "(1) Schemes of chance conducted by a charitable organization that is, and has received from the internal revenue service a determination letter that is currently in effect stating that the organization is, exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, provided that all of the money or assets received from the scheme of chance after deduction only of prizes paid out during the conduct of the scheme of chance are used by, or given, donated, or otherwise transferred to, any organization that is described in subsection 509(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, and provided that the scheme of chance is not conducted during, or within ten hours of, a bingo game conducted for amusement purposes only pursuant to section 2915.12 of the Revised Code[.]"
 {¶ 33} As we previously noted, Child Care was not a legitimate charity and the evidence adduced proved that appellee retained a portion of the proceeds from the tip ticket sales. Weller at ¶ 22.[1] For the foregoing reasons, the Commission's sole assignment of error is well-taken.
 {¶ 34} Finally, appellee argues in its brief that if this court does not affirm the decision of the trial court, we should modify the penalty. The Commission gave appellee the option to pay a $10,000 fine or serve a 100-day suspension. Appellee contends this penalty was unduly harsh. Appellee has failed to provide any authority that would demonstrate to this court that the penalty is unduly harsh or unlawful. Henry's Café, Inc. v. Bd. of Liquor Control (1959),170 Ohio St. 233. In fact, appellee acknowledges that penalties in similar cases have ranged from $5,000 fines or 50-day suspensions to $60,000 fines or 300-day suspensions. Finding that the decision of the Commission was supported by reliable, probative, and substantial evidence and was in accordance with law, we decline to modify the sanction imposed. Henry's Café. See McCartney Food Market, Inc. v. Liquor Control Comm. (June 22, 1995), Franklin App. No. 94APE10-1576 (once the Commission properly determines there is a violation of the law, the Commission has within its discretion the ability to impose various penalties, and that decision cannot be disturbed on appeal).
 {¶ 35} Accordingly, the Commission's assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and the July 10, 2001 order of the Commission is reinstated.
Judgment reversed and order reinstated.
BRYANT and KLATT, JJ., concur.
[1] This court reversed the judgment of the trial court reversing a July 2, 2001 order of the Commission. A thorough procedural and factual history is included in our opinion ruling upon the Commission's first appeal.