OPINION
{¶ 1} Appellant, the Ohio Liquor Control Commission ("commission") appeals from a judgment of the Franklin County Court of Common Pleas reversing the commission's decision to impose sanctions on appellee, Vincent A. Valentino, for violating Ohio Adm. Code 4301:1-1-53. For the reasons that follow, we reverse the judgment of the trial court.
{¶ 2} According to information contained in two "Enforcement Investigative Report[s]" filed by agents of the Ohio Department of Public Safety ("ODPS"), an 11-month investigation conducted by ODPS, the Cincinnati Police Department and the Hamilton County Sheriff's Office revealed that an entity known as Child Care Foundation, Inc. ("Child Care") had been operating under the guise of a 501(C)(3) charity in the Cincinnati area and had been distributing tip tickets[1] to liquor permit holders through a group named Kelly Distributing. According to the report, Child Care and the permit holders would split the proceeds from the sale of tip tickets without the charity receiving the proper monies. Under the scheme, the permit holder would receive two boxes of tip tickets. The first box would be sold with the profits being returned to Child Care. The second box would be sold to the permit holder for a fee. The tip tickets in the second box would be sold under the guise of the charity, with the permit holder retaining the profits. Investigators compiled a list of permit premises that were distributing tip tickets under Child Care. Vince's Other Place, an establishment owned by appellee, was one of the permit premises under investigation.
{¶ 3} On October 24, 2000, ODPS agents entered appellee's permit premises. The agents observed four plastic containers on the bar that contained tip tickets and a sign posted on the wall behind the bar that read "Child Care Foundation." One of the agents purchased four tip tickets from the barmaid, none of which were winning tickets.
{¶ 4} On November 29, 2000, ODPS agents conducted an administrative search of the permit premises. Under the bar, the agents found a clipboard to which an envelope containing $60 and two football pool sheets were attached. The agents also observed four plastic bins containing tip tickets behind the bar. Behind the plastic bins was a sign advertising the sale of the tip tickets. In addition, the agents found a small black box containing cash in the safe behind the bar. According to the barmaid, the cash in the box was from the sale of tip tickets. The agents also found several "Instant Control" sheets, which are used to record the tip tickets given to the permit holder and the profits due the charity. The "Instant Control" sheets documented that appellee had been selling tip tickets since January 2000 and projected profits of $7,492 due the charity between October 3 and November 9, 2000. During the course of the investigation, Don Varner, one of appellee's sales representatives, was interviewed. Mr. Varner stated that appellee received a second box of tip tickets which was given in return for selling the first box. He further stated that the tip-ticket scheme entailed appellee returning the profits from the first box to the charity and retaining the profits from the second box.
{¶ 5} The agents' investigative report from the October 24, 2000 incident contained the following note: "All of the tip tickets function as a scheme of chance. All of the tip tickets had a one-dollar purchase price, odds of winning, and prize amounts printed on the front of the tickets." A document attached to each of the investigative reports described tip tickets as follows:
{¶ 6} "Tip tickets regardless of type are cashed in through the bartender or barmaid. They are purchased in an assortment with a predetermined payoff. Once all the tickets are purchased a guaranteed profit is made compared to the payoffs combined."
{¶ 7} As a result of the investigations, two violation notices were issued to appellee. The first notice alleged the following violation:
{¶ 8} "Violation #1: On or about October 24, 2000, you and/or employee and/or your agent PEGGY HYNE and/or VINCENT A. VALENTINO, and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, tip tickets, in violation of Regulation 4301.1-1-53, Ohio Admin. Code."
{¶ 9} The second notice alleged the following two violations:
{¶ 10} "Violation #1: On or about November 29, 2000, you and/or employee and/or your agent PEGGY HYNE and/or VINCENT A. VALENTINO, and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, tip tickets, in violation of Regulation 4301.1-1-53, Ohio Admin. Code.
{¶ 11} "Violation #2: On or about November 29, 2000, you and/or employee and/or your agent PEGGY HYNE and/or VINCENT A. VALENTINO, and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, sports-block pool (football), in violation of Regulation 4301.1-1-53, Ohio Admin. Code."
{¶ 12} The commission conducted a hearing on the violations on June 20, 2001, at which time appellee denied the violations but stipulated to the investigative reports and the facts contained in them concerning the alleged violations. James Nerswick, an ODPS agent, was the sole witness at the hearing. Agent Nerswick reiterated the information contained in the investigative reports. Appellee offered no evidence to dispute either the investigative reports or Agent Nerswick's testimony.
{¶ 13} In two separate orders dated July 10, 2001, the commission found appellee in violation of Ohio Adm. Code 4301:1-1-53. As to the October 24, 2000 violation, the commission ordered that appellee serve a 300-day suspension of his liquor permit. With regard to the November 29, 2000 violations, the commission gave appellee the option of paying a $60,000 forfeiture or serving a 300-day suspension. Appellee appealed the orders to the Franklin County Court of Common Pleas. The common pleas court determined that the commission's orders were not supported by reliable, probative and substantial evidence, and reversed the orders. The commission appeals the court's judgment, assigning as error the following:
{¶ 14} "The common pleas court abused its discretion and erred to the prejudice of the Liquor Control Commission when it ruled the order of the Liquor Control Commission finding appellant-appellee Vincent Valentino in violation of gambling on its liquor permit premises was not supported by sufficient evidence."
{¶ 15} In Big Bob's Inc. v. Ohio Liquor Control Comm. (2003),151 Ohio App.3d 498, 501, this court explained the standard of review applicable to administrative matters:
{¶ 16} "Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111, 17 O.O.3d 65, 407 N.E.2d 1265; see, also, Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390.
{¶ 17} "The common pleas court's `review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." ' Lies v. Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quoting Andrews, 164 Ohio St. at 280, 58 O.O. 51, 131 N.E.2d 390. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Univ. of Cincinnati, supra,63 Ohio St.2d at 111, 17 O.O.3d 65, 407 N.E.2d 1265.
{¶ 18} "An appellate court's review of an administrative decision is more limited that that of a common pleas court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, rehearing denied, 67 Ohio St.3d 1439, 617 N.E.2d 688. In Pons, the Ohio Supreme Court noted, `While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead the appellate court must affirm the trial court's judgment.' Id. An appellate court does however have plenary review of purely legal questions. Steinfels v. Ohio Dept. of Commerce, Div. of Securities (1998), 129 Ohio Ap.3d 800, 803, 719 N.E.2d 76, appeal not allowed (1999), 84 Ohio St.3d 1488, 705 N.E.2d 367; McGee v. Ohio State Bd. of Psychology (1993), 82 Ohio App.3d 301, 305, 611 N.E.2d 902, citing Univ. Hosp, Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus. In re Raymundo (1990), 67 Ohio App.3d 262, 265,586 N.E.2d 1149, appeal not allowed, 53 Ohio St.3d 718, 560 N.E.2d 779."
{¶ 19} Ohio Adm. Code 4301:1-1-53(B) provides that "[n]o person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code." R.C. 2915.01(F)(2) defines "gambling device" as "[a] ticket, token or other device representing a chance, share, or interest in a scheme of chance, except a charitable bingo game, or evidencing a bet." "Scheme of chance" is defined in R.C.2915.01(C) as "a lottery, numbers game, pool, or other scheme in which a participant gives a valuable consideration for a chance to win a prize."
{¶ 20} In paragraphs one and two of the syllabus of VFW Post 8586 v. Ohio Liquor Control Comm. (1998), 83 Ohio St.3d 79, the Ohio Supreme Court held, respectively, that "[m]ere possession of a gambling device on a liquor permit premises does not constitute violation of Ohio Adm. Code4301:1-1-53(B)" and "[t]o find a violation of Ohio Adm. Code 4301:1-1-53(B), the Liquor Control Commission must receive evidence tending to prove the same elements that are required to sustain a criminal conviction of one of the gambling offenses listed in R.C. 2915.01(G)." The quantum of evidence required to obtain a criminal conviction differs from that required to find a regulatory violation. Id. at 81. A criminal conviction must be supported by proof beyond a reasonable doubt, while a violation of Ohio Adm. Code 4301:1-1-53(B) need only be supported by a preponderance of the evidence. Id. Further, a violation of Ohio Adm. Code 4301:1-1-53(B) need not be proved by direct evidence. Id. at 82. The commission may draw reasonable inferences based on the evidence before it. Id.
{¶ 21} Pursuant to R.C. 2915.01(G), a gambling offense includes a violation of R.C. 2915.02. R.C. 2915.02(A) provides:
{¶ 22} "No person shall do any of the following:
{¶ 23} "* * *
{¶ 24} "(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit[.]"
{¶ 25} In reversing the commission's order, the court of common pleas concluded that: (1) there was no evidence in the record that appellee knowingly violated Ohio Adm. Code 4301:1-1-53(B) with regard to the tip ticket sales; (2) there was no evidence in the record that appellee either sold, or profited from the sale of, tip tickets; (3) the commission impermissibly placed the burden of proof upon appellee concerning the tip tickets; and (4) there was no evidence in the record that appellee permitted sports-block gambling.
{¶ 26} "Because a tip ticket represents a chance in a scheme in which a participant gives valuable consideration for a chance to win a prize, a tip ticket is a `gambling device' pursuant to R.C. 2915.01(F)(2) and 2915.01(C), and therefore also under Ohio Adm. Code 4301:1-1-53(B). * * *" Big Bob's, Inc., supra, at ¶ 18. See, also, Hurt v. State Liquor Control Comm. (Nov. 26, 1997), Montgomery App. No. 16232 and Weller v. Ohio Liquor Control Comm., Franklin App. No. 02AP-333, 2002-Ohio-6308, at ¶ 18.
{¶ 27} We first find that the trial court erroneously concluded that the commission was required to establish that appellee knowingly violated Ohio Adm. Code 4301:1-1-53(B) with regard to the sale of tip tickets. In Temple v. Ohio Liquor Control Comm., Franklin App. No. 02AP-515, 2002-Ohio-6628, this court recently rejected a similar argument under circumstances nearly identical to those in the instant case:
{¶ 28} "Not all of the gambling offenses listed in R.C. 2915.01(G) include a scienter element. For example, the list of offenses in R.C.2915.01(G) includes R.C. 2915.02. R.C. 2915.02(A)(2) states in part that no person shall `promote, or operate * * * any scheme or game of chance conducted for profit[.]' A "scheme of chance" means a lottery, numbers game, pool or other scheme in which a participant gives a valuable consideration for a chance to win a prize.' R.C. 2915.01(C). Hence, a criminal conviction could be sustained by establishing the elements of (1) promote or operate; (2) valuable consideration; (3) prize; or (4) profit.
{¶ 29} "The stipulated evidence demonstrates that appellee promoted or operated a scheme of chance. A sign accompanying the tip-tickets advertised that they were being sold on behalf of Child Care, and the investigative report detailed how the barmaid offered the tip-tickets for sale. Under these circumstances, appellant was not required to establish that appellee knowingly violated the administrative code." Id. at ¶¶ 17 and 18.
{¶ 30} Second, the undisputed evidence presented by stipulation contradicts the trial court's determination that no evidence established that appellee either sold tip tickets or profited from their sale. The record contains direct evidence to support a finding that tip tickets were being sold on the permit premises. The investigative report filed pursuant to the October 24, 2000 incident stated that ODPS agents purchased and opened four tip tickets on the permit premises. Moreover, the record reflects that during the course of their investigation, ODPS agents observed containers of tip tickets, a sign promoting the sale of tip tickets, and "Instant Control" sheets. Such evidence supports the inference that tip tickets were sold on the permit premises. See VFW Post 7262 v. Ohio Liquor Control Comm. (May 15, 1998), Montgomery App. No. 97 CA 1458.
{¶ 31} Further, the record contains evidence demonstrating that appellee profited from the sale of tip tickets. Initially, we note that this court has held that actual profit need not be shown in order to establish a violation of Ohio Adm. Code 4301:1-1-53(B); the profit element may be established by proof that the gambling device produced income for the permit holder. Loom Lodge 2156 Northfield v. Ohio Liquor Control Comm., Franklin App. No. 02AP-667, 2003-Ohio-38, ¶ 14. See, also, Big Bob's, Inc. at ¶ 26. See, also, R.C. 2915.01(E) (" `Scheme or game of chance conducted for profit' means any scheme or game of chance designed to produce income for the person who conducts or operates the scheme or game of chance, but does not include a charitable bingo game.")
{¶ 32} Here, the profit element was established by proof of income from the sale of tip tickets. On their October 24, 2000 visit, the agents purchased four $1 tip tickets; none were winning tickets. From that $4 outlay, appellee received income in the amount of $4. Further, appellee stipulated that the money found behind the bar was income from the sale of tip tickets. See Loom Lodge 2156 Northfield, supra, at ¶ 15. Moreover, the "Instant Control" sheets documented that appellee received income of $7,492 from sale of tip tickets during the months of October and November 2000. See Weller at ¶ 9. In addition, appellee also stipulated to the ODPS investigative reports which stated that tip tickets are produced in such a way as to guarantee profit. In both Temple and Loom Lodge 2156 Northfield, this court concluded that similar language contained in an agent's investigative report was sufficient to establish that tip-ticket gambling was for profit. Finally, the stipulated evidence includes Mr. Varner's statement that appellee retained the profits from the second box of tip tickets. Accordingly, the commission could reasonably conclude that appellee violated Ohio Adm. Code4301:1-1-53(B) by permitting tip-ticket gambling on the permit premises. See Big Bob's, Inc., supra at ¶ 29, Temple, supra, at ¶ 19; Loom Lodge 2516 Northfield, supra, at ¶ 14.
{¶ 33} We turn next to appellee's contention that the trial court abused its discretion in concluding that the commission impermissibly placed the burden of proof upon appellee. In its decision, the common pleas court stated that "[t]he commission cannot place the burden of production on the permit holder to show that there was no profit or intent, but rather it is the burden of the Department to offer such evidence." (April 18, 2002 Decision, page 7.) The commission argues, and we agree, that the foregoing statement suggests that the common pleas court confused the state's burden of proving the elements of a gambling offense with appellee's burden of proving an affirmative defense. As we have already determined, the state fulfilled its burden of proving that appellee violated Ohio Adm. Code 4301:1-1-53(B). The burden then shifted to appellee to prove that it was exempted from Ohio Adm. Code 4301:1-1-53(B) under the charitable organization exception in R.C. 2915.02(D). In Hurt, supra, the court stated:
{¶ 34} "As a general matter, we agree with the [commission] that the burden of proof under the charitable exception lies with the party charged under R.C. 2915.02. The Revised Code places the burden of persuasion by a preponderance of the evidence with a person asserting an affirmative defense. * * * R.C. 2915.02(D) creates an affirmative defense.
{¶ 35} "* * *
{¶ 36} "Because we find that compliance with R.C. 2915.02(D) is an affirmative defense, we agree with the [commission] that the [permit holder] was required to show compliance with that provision to exempt her from Ohio Adm. Code 4301:1-1-53. * * *"
{¶ 37} Former R.C. 2915.02(D) provided in pertinent part:
{¶ 38} "(1) Schemes of chance conducted by a charitable organization that is, and has received from the internal revenue service a determination letter that is currently in effect stating that the organization is, exempt from federal income taxation under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, provided that all of the money or assets received from the scheme of chance after deduction only of prizes paid out during the conduct of the scheme of chance are used by, or given, donated, or otherwise transferred to, any organization that is described in subsection 509(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(a) and described in subsection 501(c)(3) of the Internal Revenue Code, and provided that the scheme of chance is not conducted during, or within ten hours of, a bingo game conducted for amusement purposes only pursuant to section 2915.12 of the Revised Code * * *[.]"
{¶ 39} In the instant case, appellee presented no evidence that his establishment qualified as an organization exempt from gambling prohibitions under R.C. 2915.02(D). As this court noted in Weller, "[Child Care] is not a legitimate charity, and the evidence clearly proves that [the permit holder] retained profits from the [tip] ticket sales." Id. at ¶ 22; see, also, Merritt v. Ohio Liquor Control Comm., Franklin App. No. 02AP-709, 2003-Ohio-822.
{¶ 40} Finally, we find that the common pleas court abused it discretion in concluding that there was no evidence in the record that appellee permitted sports-block pool (football) gambling on the permit premises.
{¶ 41} Because a football pool represents a chance in a scheme to which a participant gives valuable consideration for a chance to win a prize, a football pool is a "gambling device" pursuant to R.C. 2915.02(F)(2) and 2915.01(C), and therefore also under Ohio Adm. Code 4301:1-1-53(B). See FOE Aerie 2251 v. Liquor Control Comm. (Oct. 30, 1995), Tuscarawas App. No. 95AP030020. In that case, the court determined that discovery of a football pool board posted on the wall of a permit holder's premises established that the gambling device was being used by the permit holder's patrons. In the instant case, the stipulated evidence establishes that during their search of the permit premises, the ODPS agents observed two football pool sheets and $60 in cash attached to a clipboard under the bar. Applying FOE Aerie 2251, we find that this evidence supports a reasonable inference that the football pool was being used by patrons of appellee's establishment. Further, we find that the $60 cash attached to the football pool sheets supports a reasonable inference that the football pool was operated to generate income for appellee. Accordingly, the commission could reasonably conclude that appellee violated Ohio Adm. Code 4301:1-1-53(B) by permitting sports-block gambling on the permit premises. However arguable the evidence, the trial court abused its discretion in concluding there was no evidence in the record on this charged violation.
{¶ 42} For the foregoing reasons, we find that the common pleas court abused its discretion by concluding that the commission's orders were not supported by reliable, probative, and substantial evidence; therefore, the commission's assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court with instructions to reinstate the orders of the Ohio Liquor Control Commission.
 Judgment reversed and cause remanded with instructions. LAZARUS, J., concurs. BROWN, J., concurs in part and dissents in part.
[1] "Tip tickets are games comparable to instant winner games conducted by the Ohio Lottery Commission. * * * A tip ticket purchaser opens the ticket to determine whether it reveals a symbol indicating that she or he has won money." Amvets Post 1983 Schneider Hume, Inc. v. Ohio Liquor Control Comm. (Feb. 13, 2001), Franklin App. No. 00AP-480.