[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 79.]

VFW POST 8586, APPELLEE, *v.* OHIO LIQUOR CONTROL COMMISSION, APPELLANT.

[Cite as *VFW Post 8586 v. Ohio Liquor Control Comm*., 1998-Ohio-181.]

*Administrative law—Mere possession of a gambling device on a liquor permit premises does not constitute violation of Ohio Adm.Code 4301:1-1-53(B)— Requirement for Liquor Control Commission to find a violation of Ohio Adm.Code 4301.1-1-53(B).*

1.   Mere possession of a gambling device on a liquor permit premises does not constitute a violation of Ohio Adm.Code 4301:1-1-53(B).

2.   To find a violation of Ohio Adm.Code 4301:1-1-53(B), the Liquor Control Commission must receive evidence tending to prove the same elements that are required to sustain a criminal conviction of one of the gambling offenses listed in R.C. 2915.01(G).

(Nos. 97-1383 and 97-1384—Submitted June 10, 1998—Decided August 19, 1998.)

CERTIFIED by and APPEAL from the Court of Appeals for Ashland County, No. 96-COA-01167.

_____

{¶ 1} Upon commencing a warrantless administrative investigation of appellant VFW Post 8586's class D-4 liquor permit premises, agents of the Department of Liquor Control immediately observed seven video poker machines. The agents deposited a quarter into each of four of the machines and a dollar into a fifth machine and played off the credits they had purchased. The agents then ordered the opening of all of the machines, and found that they contained a total of $319. Based on this investigation, the Ohio Department of Liquor Control cited VFW Post 8586 for violating Ohio Adm.Code 4301:1-1-53.

**{¶ 2}** After a hearing, the Liquor Control Commission issued an order finding that VFW Post 8586 had violated Ohio Adm.Code 4301:1-1-53 and ordered alternative sanctions of a $28,000 forfeiture or a one-hundred-forty-day suspension. The Ashland County Court of Common Pleas affirmed the commission's order on administrative appeal. On further appeal, however, the Ashland County Court of Appeals reversed, concluding that the commission had relied upon insufficient evidence to support a violation of Ohio Adm.Code 4301:1-1-53(B).

**{¶ 3}** The court of appeals certified that its decision was in conflict with the decisions of the Mercer County Court of Appeals in *Loyal Order of Moose Lodge No. 1473 v. Liquor Control Comm.* (1994), 95 Ohio App.3d 109, 641 N.E.2d 1182; the Ross County Court of Appeals in *Am. Legion Post 0014 v. Liquor Control Comm.* (July 25, 1989), Ross App. No. 1482, unreported, 1989 WL 86278; the Sandusky County Court of Appeals in *Am. Legion Post 0046 Bellevue v. Liquor Control Comm.* (1996), 111 Ohio App.3d 795, 677 N.E.2d 384, and the Franklin County Court of Appeals in *Mills-Jennings of Ohio, Inc. v. Liquor Control Comm.* (1984), 16 Ohio App.3d 290, 16 OBR 321, 475 N.E.2d 1321. This cause is now before this court upon our determination that a conflict exists and pursuant to our contemporaneous allowance of a discretionary appeal.

––––––––––––––––

*Fawley & Associates, Darrell E. Fawley, Jr.* and *Kurt O. Gearhiser*, for appellee.

*Betty D. Montgomery,* Attorney General, and *David A. Raber,* Assistant Attorney General, for appellant.

––––––––––––––––

**COOK, J.**

**{¶ 4}** The issue certified to this court is "[w]hether, mere possession of gambling devices [on liquor permit premises] violates Ohio Adm.Code 4301:1-1-53." In its briefing of the issue and at oral argument, however, the commission has

conceded that possession of a gambling device on liquor permit premises, without more, does not constitute a violation of the administrative regulation. It is clear from a simple reading of the administrative regulation that the commission's concession is proper. Ohio Adm.Code 4301:1-1-53(B) states:

"No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of [*sic*] any gambling device as defined in division (F) of section 2915.01 of the Revised Code *which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code.*" (Emphasis added.)

{¶ 5} Because a violation of Ohio Adm.Code 4301:1-1-53(B) expressly requires that the gambling device or devices possessed are used or have been used for one of the gambling offenses defined in R.C. 2915.01(G), mere possession of a gambling device on a liquor permit premises does not constitute a violation. Accordingly, we summarily dispose of the issue certified to this court.

{¶ 6} We also accepted this case on discretionary appeal, and, in briefing and arguing the case, the parties have significantly diverged from the certified issue. The parties have framed much of their arguments in this appeal around the issue of whether the commission received sufficient evidence to find that VFW Post 8586 violated Ohio Adm.Code 4301:1-1-53(B). There is no dispute that VFW Post 8586 possessed video poker machines or that the machines are gambling devices as defined in R.C. 2915.01(F). See *Mills-Jennings of Ohio, Inc. v. Dept. of Liquor Control* (1982), 70 Ohio St.2d 95, 24 O.O.3d 181, 435 N.E.2d 407, syllabus (stating that under R.C. 2915.01[D] and [F][3], electronic draw poker machines are gambling devices *per se*). Instead, it is that portion of Ohio Adm.Code 4301:1-1-53(B) requiring that a gambling device "is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code" that provides the point of contention in this case.

**{¶ 7}** Initially, we note our agreement with VFW Post 8586 that, in finding a violation of Ohio Adm.Code 4301:1-1-53(B), the commission must determine that the gambling devices in question were used to commit a gambling offense listed in R.C. 2915.01(G). Accordingly, to find a violation of Ohio Adm.Code 4301:1-1-53(B), the commission must receive evidence tending to prove the same *elements* that are required to sustain a criminal conviction of one of the gambling offenses listed in R.C. 2915.01(G). See *Abdoney v. Bd. of Liquor Control* (1955), 101 Ohio App. 57, 60, 1 O.O.2d 33, 34, 135 N.E.2d 775, 778.

**{¶ 8}** The *quantum of evidence* required to obtain a conviction on a criminal offense differs, however, from that required to find a regulatory violation. While a criminal conviction must be supported by proof beyond a reasonable doubt, a violation of Ohio Adm.Code 4301:1-1-53 need only be supported by a preponderance of the evidence. See *Angola Corp. v. Liquor Control Comm.* (1972), 33 Ohio App.2d 87, 62 O.O.2d 142, 292 N.E.2d 886.

**{¶ 9}** In reviewing the commission's order pursuant to an R.C. 119.12 appeal, a common pleas court is required to affirm if the commission's order is supported by "reliable, probative, and substantial evidence and is in accordance with law." In connection with this standard of review, this court has stated that "an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest on improper inferences, or are otherwise unsupportable." *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591, 595. With respect to purely legal questions, however, the court is to exercise independent judgment. *Id.* at 471, 613 N.E.2d at 595-596.

{¶ 10} Based on the stipulated evidence, we conclude that the commission had sufficient evidence before it to find that the gambling machines had been used to violate R.C. 2915.02(A)(2),[1] which provides:

"(A) No person shall do any of the following:

" * * *

"(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit."

{¶ 11} As part of its argument, VFW Post 8586 notes that the commission did not receive direct evidence that anyone aside from the agents played the machines or that anyone was paid off in connection with playing the machines. There is no requirement, however, that a violation be proved by direct evidence. The commission is permitted to draw reasonable inferences based on the evidence before it.

{¶ 12} The stipulated evidence permits a reasonable inference that someone other than the officers in question had played the video poker machines: agents found video poker machines on the permit premises in a location accessible to club patrons, the poker machines were operational and could be played upon the deposit of money, and the agents recovered $319 from the machines after depositing less than $3. Accordingly, the commission could reasonably infer that club patrons had played the machines.

{¶ 13} Further, because the video machines in question played poker, the department was not required to come forward with evidence of payoff or any other evidence tending to show that the machines were played in the hope of gain. A violation of R.C. 2915.02(A)(2) requires that the activity involved be either a "game of chance" or "scheme of chance." R.C. 2915.01(D) defines "game of chance" to

---

1. Neither court below engaged in a detailed analysis of which "gambling offense," if any, the machines had been used to commit. Nevertheless, the parties have directed their arguments to R.C. 2915.02(A)(2), and we proceed with our analysis under that division.

mean "*poker*, craps, roulette, a slot machine, a punch board, *or* other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely or wholly by chance." (Emphasis added.) *Id.* R.C. 2915.01(D) recognizes that its enumerated games, including poker, are largely determined by chance and involve a player giving something of value in the hope of gain. It draws other games within its purview only if they are demonstrated to similarly involve an element of chance and the giving of something of value in the hope of gain.

{¶ 14} Because poker is *per se* a "game of chance" within the meaning of R.C. 2915.01(D), and because it was stipulated that the machines in question play poker,[2] the department was not required to produce separate evidence regarding a player's giving of value in hope of gain. That additional demonstration is required only for games not specifically labeled as games of chance in R.C. 2915.01(D). Therefore, the commission had before it sufficient evidence to find that the video poker machines at issue played a "game of chance."

{¶ 15} Our analysis is consistent with this court's earlier holdings in *Mills-Jennings*, 70 Ohio St.2d 95, 24 O.O.3d 181, 435 N.E.2d 407, syllabus, and *Garono v. State* (1988), 37 Ohio St.3d 171, 175, 524 N.E.2d 496, 500, both of which classified draw poker machines as gambling devices *per se*. To be a gambling device under R.C. 2915.01(F)(3), the draw poker machines had to be "designed for use in connection with a *game of chance*." (Emphasis added.) Because the General Assembly specifically listed poker as a "game of chance," and because the machines at issue played the game of poker, this court concluded that draw poker machines play a "game of chance" within the meaning of R.C. 2915.01(D). *Mills-Jennings*, 70 Ohio St.2d at 97-98, 24 O.O.3d at 182, 435 N.E.2d at 409; *Garono*,

---

2. The "Description of an Electronic Video Gambling Machine" stipulated into evidence before the commission describes the game played on the video machines as being a variation of draw poker. Before the commission, VFW Post 8586 did not attempt to introduce evidence that in any essential respect differentiates the game being played on the video machines from poker as it is commonly understood to be played.

37 Ohio St.3d at 175, 524 N.E.2d at 500. Additionally, in *Garono*, we settled the issue "once and for all" by specifically holding that "the General Assembly appropriately determined poker to be a game of chance." *Id.*

{¶ 16} VFW Post 8586 also argues that the commission received no evidence that the machines were operated for profit—another element of an R.C. 2915.02(A)(2) offense. R.C. 2915.01(E) defines a "game of chance conducted for profit" as used in R.C. 2915.02(A)(2) as "any * * * game of chance designed to produce income for the person who conducts or operates the * * * game of chance." We may ascertain from the stipulated evidence that, in playing the game, the machines set the odds of winning against the player. The stipulated evidence included a document entitled "Description of an Electronic Video Gambling Machine," which explains how the video poker game is played, including what combination of cards constitutes a winning hand and the credits awarded for each winning hand. That document also explains that the odds of receiving a winning hand on the machines are reduced from regular draw poker in that the machine does not count any pair lower than aces as a winning hand. Further, as previously noted, the agents' report and evidence inventory stipulated into evidence demonstrate that the agents recovered $319 from the machines after inserting under $3. Accordingly, it was reasonable for the commission to infer that the video poker machines at issue were operated to generate income.

{¶ 17} We think it important to confirm that our analysis concerning the quantum of evidence required to support a violation of Ohio Adm.Code 4301:1-1-53(B) was undertaken with reference to the preponderance of the evidence standard applicable to the administrative decision. We do not address whether the same evidence would be sufficient to sustain a criminal conviction under R.C. 2915.02(A)(2), as that inquiry would proceed under the more exacting beyond a reasonable doubt standard. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, syllabus; see, also, *Garono*, 37 Ohio St.3d at 175, 524 N.E.2d at 500.

We decide only that, under the standard of review set forth in R.C. 119.12, the common pleas court correctly affirmed the commission's decision as legally supportable, and the appellate court improperly determined that the common pleas court had abused its discretion in that respect. Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., dissent.

———————————