BIG BOB'S, INC., d.b.a. Billy C's Club, Appellant,

v.

OHIO LIQUOR CONTROL COMMISSION, Appellee.

[Cite as *Big Bob's, Inc. v. Ohio Liquor Control Comm.*,
151 Ohio App.3d 498, 2003-Ohio-418.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–708.

Decided Jan. 30, 2003.

Gary L. Jones Co., L.P.A., and Mark S. Gutentag, for appellee.

Jim Petro, Attorney General, and Cheryl D. Porkorny, Assistant Attorney General, for appellant.

PEGGY BRYANT, Judge.

{¶ 1}  Appellant, Ohio Liquor Control Commission ("commission"), appeals from a judgment of the Franklin County Court of Common Pleas reversing an order of the commission that directed appellee, Big Bob's, Inc. ("Big Bob's"), to either pay a forfeiture in the amount of $2,500 or serve a 25–day suspension. Because the common pleas court abused its discretion in reversing the commission's order, we reverse.

{¶ 2}  According to stipulated facts, agents of the Ohio Department of Public Safety received a complaint alleging sales of alcohol to minors at Big Bob's, d.b.a. Billy C's Pub, in Cleveland, Ohio. On December 15, 2000, two agents visited Billy C's Pub to investigate the alleged violations.  Although agents did not find any underage patrons in the premises during this visit, agents observed several patrons putting money into a tip ticket dispensing machine and opening the tip tickets to determine if they had won.  "Tip tickets are games comparable to instant winner games conducted by the Ohio Lottery Commission.  * * * A tip ticket purchaser opens the ticket to determine whether it reveals a symbol indicating that she or he has won money." *Amvets Post 1983 Schneider Hume, Inc. v. Ohio Liquor Control Comm.* (Feb. 13, 2001), Franklin App. No. 00AP–480, 2001 WL 118538, appeal not allowed in 92 Ohio St.3d 1414, 748 N.E.2d 547.

{¶ 3}  On December 19, 2000, the same two agents returned to Billy C's Pub. During the visit, one of the agents put $5 into the tip ticket dispensing machine and received five tip tickets.  The agent opened the tip tickets and discovered that one of the tickets was a winner in the amount of $2. After the agent informed the barmaid of the winning ticket, the barmaid took the ticket, removed $2 from the cash register, and gave the agent her winnings.  The agent mentioned to the barmaid that the bar owner must make a lot of money because the tip ticket machine was in the bar.  The barmaid reportedly responded "surprisingly enough he does not make that much, but enough."  The agents then left the premises.

{¶ 4} On January 3, 2001, the same two agents returned to Billy C's Pub. During the visit, an agent put $1 into the tip ticket dispensing machine and received a tip ticket; the ticket was not a winner. Agents then left the premises.

{¶ 5} On January 4, 2001, after having obtained a search warrant, the two agents again returned to Billy C's Pub. Agents executed the search warrant and seized gambling related items including tip tickets, pieces of cardboard that appeared to be records of a football pool, and $188 from the cash register.

{¶ 6} The Ohio Department of Public Safety served notice on Big Bob's informing Big Bob's that an administrative hearing would be held to determine whether Big Bob's liquor license should be suspended or revoked, or a forfeiture should be ordered. The notice of hearing alleged that on or about January 4, 2001, Big Bob's committed four violations on its premises pursuant to Ohio Adm.Code 4301:1–1–53: (1) permitting gaming or wagering on a game of skill or chance, namely tip tickets, (2) permitting gaming or wagering on a game of skill or chance, namely having a tip ticket dispensing machine, (3) permitting gaming or wagering on a game of skill or chance, specifically a sports block pool, and (4) permitting gaming or wagering on permit premises by failing to maintain charitable records.

{¶ 7} At the December 4, 2001 hearing before the commission, the third and fourth violations were dismissed; proceedings were held concerning the two remaining charges of permitting gaming or wagering on tip tickets and having a tip ticket dispensing machine on the liquor permit premises. At the hearing, Big Bob's denied the alleged violations but stipulated to the agents' enforcement investigative report and the facts contained in it concerning the alleged violations.

{¶ 8} The commission mailed an order finding that Big Bob's had committed the two alleged violations and directing Big Bob's to either pay a forfeiture in the amount of $2,500 or serve a 25–day suspension. Pursuant to R.C. 119.12, Big Bob's appealed the commission's order to the Franklin County Court of Common Pleas, and it granted Big Bob's motion to stay execution of the commission's order pending a final determination of Big Bob's appeal. On May 30, 2002, the common pleas court reversed the commission's order because the court found that the commission's order was not supported by reliable, substantial and probative evidence. The commission timely appeals, assigning two errors:

{¶ 9} "Assignment of Error I

{¶ 10} "The common pleas court abused its discretion and erred to the prejudice of the Liquor Control Commission when it ruled the order of the Liquor Control Commission finding appellant-appellee Big Bob, Inc. [sic] guilty of gambling on its liquor permit premises in violation of rule 4301:1–1–53, Ohio Admin. Code was not supported by sufficient evidence.

{¶ 11} "Assignment of Error II

{¶ 12} "The common pleas court abused its discretion and erred to the prejudice of the Liquor Control Commission when it impermissibly reviewed the weight of the evidence and substituted its judgment for that of the administrative agency."

{¶ 13} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative and substantial evidence and is in accordance with law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 110–111, 17 O.O.3d 65, 407 N.E.2d 1265; see, also, *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390.

{¶ 14} The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" *Lies v. Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quoting *Andrews*, 164 Ohio St. at 280, 58 O.O. 51, 131 N.E.2d 390. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. *Univ. of Cincinnati*, supra, 63 Ohio St.2d at 111, 17 O.O.3d 65, 407 N.E.2d 1265.

{¶ 15} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, rehearing denied, 67 Ohio St.3d 1439, 617 N.E.2d 688. In *Pons*, the Ohio Supreme Court noted, "While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court abused its discretion, *i.e.,* being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment." Id. An appellate court does however have plenary review of purely legal questions. *Steinfels v. Ohio Dept. of Commerce, Div. of Securities* (1998), 129 Ohio App.3d 800, 803, 719 N.E.2d 76, appeal not allowed (1999), 84 Ohio St.3d 1488, 705 N.E.2d 367; *McGee v. Ohio State Bd. of Psychology* (1993), 82 Ohio App.3d 301, 305, 611 N.E.2d 902, citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the

syllabus; *In re Raymundo* (1990), 67 Ohio App.3d 262, 265, 586 N.E.2d 1149, appeal not allowed, 53 Ohio St.3d 718, 560 N.E.2d 779.

{¶ 16} In its first assignment of error, the commission contends that sufficient evidence supports the commission's finding a violation of Ohio Adm. Code 4301:1–1–53 because facts within the enforcement investigative report, which was admitted into the record and to which Big Bob's stipulated, prove the elements of gambling and reveal that Big Bob's was selling tip tickets for profit.

{¶ 17} Ohio Adm.Code 4301:1–1–53(B) provides that "[n]o person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder or any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code." See R.C. 2915.01(F)(2) ("Gambling device" includes a ticket representing a chance, share, or interest in a scheme of chance); R.C. 2915.01(F)(4) ("Gambling device" includes equipment specially designed for gambling purposes); and R.C. 2915.01(C) (" 'Scheme of chance' means a lottery, numbers game, pool, or other scheme in which a participant gives a valuable consideration for a chance to win a prize").

{¶ 18} Because a tip ticket represents a chance in a scheme in which a participant gives valuable consideration for a chance to win a prize, a tip ticket is a "gambling device" pursuant to R.C. 2915.01(F)(2) and 2915.01(C), and therefore also under Ohio Adm.Code 4301:1–1–53(B). See *Hurt v. State Liquor Control Comm.* (Nov. 26, 1997), Montgomery App. No. 16232, 1997 WL 736506, appeal not allowed (1998), 81 Ohio St.3d 1467, 690 N.E.2d 1287 (finding that "[a] tip ticket * * * is a 'gambling device' within the statutory definition and, therefore, also under the administrative rule"); *Weller v. Ohio Liquor Control Comm.,* Franklin App. No. 02AP–333, 2002–Ohio–6308, at ¶ 18, 2002 WL 31618479 (concluding that tip tickets constitute gambling devices within the meaning of R.C. 2915.01[F][2] ). Moreover, given that a tip ticket dispensing machine dispenses tip tickets, a tip ticket dispensing machine is a "gambling device" under R.C. 2915.01(F)(4).

{¶ 19} Under *VFW Post 8586 v. Ohio Liquor Control Comm.* (1998), 83 Ohio St.3d 79, 697 N.E.2d 655, paragraph one of the syllabus, "[m]ere possession of a gambling device on a liquor permit premises does not constitute a violation of Ohio Adm.Code 4301:1–1–53(B)." "To find a violation of Ohio Adm.Code 4301:1–1–53(B), the Liquor Control Commission must receive evidence tending to prove the same elements that are required to sustain a criminal conviction of one of the gambling offenses listed in R.C. 2915.01(G)." Id., paragraph two of the syllabus. However, unlike a criminal conviction, the quantum of evidence required to support a violation of Ohio Adm.Code 4301:1–1–53 is a preponderance of the

evidence standard. Id. at 81, 697 N.E.2d 655. The commission may draw reasonable inferences based on the evidence before it. Id. at 82, 697 N.E.2d 655.

{¶ 20} Pursuant to R.C. 2915.01(G)(1), a gambling offense includes a violation of R.C. 2915.02. R.C. 2915.02(A) provides:

{¶ 21} "No person shall do any of the following:

{¶ 22} "* * *

{¶ 23} "(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit;

{¶ 24} "* * *

{¶ 25} "(5) With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device."

{¶ 26} See, also, R.C. 2915.01(E) (" 'Scheme or game of chance conducted for profit' means any scheme or game of chance designed to produce income for the person who conducts or operates the scheme or game of chance, but does not include a charitable bingo game"). See, also, *Loom Lodge 2156 Northfield v. Ohio Liquor Control Comm.*, Franklin App. No. 02AP–667, 2003-Ohio-38, at ¶ 14, 2003 WL 68016 (concluding that actual profit not required to find a violation of Ohio Adm.Code 4301:1–1–53; rather profit can be established by proof that gambling device produced income for permit holder).

{¶ 27} The common pleas court concluded that the record lacks sufficient evidence of profit to support the violations with which Big Bob's was charged. Contrary to the common pleas court's determination, the record provides evidence on which the commission reasonably could rely to find that Big Bob's violated Ohio Adm.Code 4301:1–1–53 by deriving income from the tip ticket operation on the permit premises. Initially, the stipulated investigative report refers to "an illegal tip ticket dispensing machine." It also describes the agent's receipt of $2 from the barmaid as "ending the process of the illegal gambling practices in the permit premises."

{¶ 28} Although Big Bob's stipulation to the report and to its characterization of the facts as "illegal" is inconsistent with Big Bob's denial of the alleged violations, Big Bob's stipulation arguably allowed the commission to rely on the factual characterizations within the report. See, e.g., *Citizens for Choice v. Summit Cty. Council* (2001), 143 Ohio App.3d 823, 833, 759 N.E.2d 398, appeal not allowed, 93 Ohio St.3d 1472, 757 N.E.2d 771, quoting *Sears Roebuck Co. v. J–Z Realty Co.* (Nov. 2, 1976), Franklin App. No. 76AP–332. See, also, *State v. Folk* (1991), 74 Ohio App.3d 468, 471, 599 N.E.2d 334, appeal not allowed, 62 Ohio St.3d 1447, 579 N.E.2d 492 ("Ordinarily, parties are bound as to all matters of fact and law concerned in their stipulations"). But, see, *Diversified Capping*

*Equip., Inc. v. Clinton Pattern Works, Inc.*, Wood App. No. WD–01–035, 2002-Ohio-2295, 2002 WL 537998, at ¶ 24 ("even though litigants may stipulate as to facts, they may not stipulate as to what the law requires. * * * Thus, stipulations of law or stipulations as to legal conclusions are not binding upon the court").

{¶ 29}  Even if the report's language characterizing the activity as illegal represents a legal conclusion to which Big Bob's did not stipulate, the remaining stipulated facts demonstrate not only that Big Bob's received income from tip tickets but also that, as a result, the tip ticket dispensing machine found on the premises was a gambling device that produced income for Big Bob's. More specifically, of the five tickets the agent purchased, only one ticket was a winner in the amount of $2. Thus, from the agent's $5 outlay, Big Bob's received income in the amount of $3. Additionally, on another visit, for $1 the same agent purchased another tip ticket from the tip ticket dispensing machine; it was not a winning ticket.  Consequently, from that $1 outlay Big Bob's received income in the amount of $1. From a total outlay of $6 from the agents, the agents received $2 in winnings and Big Bob's received $4 in income.  Accordingly, the commission reasonably could conclude that Big Bob's violated Ohio Adm.Code 4301:1–1–53. See *Loom Lodge 2156 Northfield* at ¶ 14.

{¶ 30}  As further support for a finding that Big Bob's derived profit from the tip tickets, Bob Dering, whom Big Bob's counsel identified as the "permit holder," stated at the hearing in unsworn conversation with the commission members that he received 3,000 tip tickets.  He further stated $2,500 was paid out to winning tickets, leaving $500 of profit that he gave to a charity, the name of which Dering could not recall.  Dering produced no documentation supporting his claim, although he stated that he believed that information about how much money was given to charity was contained in one of the books agents allegedly seized.

{¶ 31}  Because Dering admitted that he received $500 profit from the tip ticket operation, the record contains that additional basis for finding the profit element to the alleged violations.  Moreover, while giving the profit to a charity may legitimize the tip ticket operation under certain circumstances, see R.C. 2915.02, Dering was unable even to name the charity, much less testify to the information necessary to bring Big Bob's within the charity exception.  See *Hurt*, supra ("As a general matter, we agree * * * that the burden of proof under the charitable exception lies with the party charged under R.C. 2915.02").  See, also, Ohio Adm.Code 4301:1–1–53(D) (stating that Ohio Adm.Code 4301:1–1–53 shall not be construed to prohibit a game or contest provided there is strict compliance with R.C. 2915.02[D] ).  As the party asserting that it gave all profits to a charity, Big Bob's was best situated to provide evidence relating to its compliance with

R.C. 2915.02(D), including evidence that it gave all profits to a qualifying charity. Big Bob's, however, failed to carry that burden.

{¶ 32} Moreover, Dering's statements, even if considered sworn evidence, frequently were inconsistent. For example, Dering's assertion that he had 2,500 winning tickets out of 3,000 tickets is inconsistent with evidence presented in the enforcement investigative report to which Big Bob's stipulated. Specifically, the enforcement investigative report indicates that a poster board on the premises described payouts from tip tickets as ranging from $2 to $250. With that payout range, and even if all 2,500 winning tickets paid only the minimum of $2, payouts would require a minimum $5,000 even though the maximum total income from the tip tickets would have been $3,000, as the evidence showed that the tickets were sold at $1 per ticket. The unnamed charity would have lost $2,000 from sales of tip tickets, rather than have received any financial gain. Such a result is illogical. Based on the evidence Big Bob's presented at the hearing, the commission could have reasonably concluded that Big Bob's failed, by a preponderance of the evidence, to establish that it gave all proceeds to an unnamed charity as it claimed. See, e.g., *Benner v. Ohio Liquor Control Comm.* (Dec. 28, 1998), Greene App. No. 98–CA–66, 1998 WL 895909.

{¶ 33} In the final analysis, the record contains reliable, probative and substantial evidence of the elements required to sustain a criminal conviction under R.C. 2915.02(A)(2), thereby supporting the commission's finding that Big Bob's violated Ohio Adm.Code 4301:1–1–53(B). See *VFW Post 8586*, 83 Ohio St.3d at 79, 697 N.E.2d 655, paragraph two of the syllabus. Moreover, because pursuant to R.C. 4301.25(A) the commission has authority to suspend or revoke a liquor permit for violations of R.C. Chapter 4301 or 4303, or any commission rule, and because R.C. 4301.252 grants the commission authority to permit payment of a forfeiture in lieu of a suspension, the commission had the authority to suspend or revoke Big Bob's permit and to allow Big Bob's to elect to pay a forfeiture. See *FOE AERIE 2347 v. Ohio State Liquor Control Comm.* (Dec. 27, 2001), Franklin App. No. 01AP–675, 2001 WL 1654475.

{¶ 34} Accordingly, the common pleas court abused its discretion by concluding that the commission's order was not supported by reliable, probative and substantial evidence. The commission's first assignment of error is sustained, rendering the commission's second assignment of error moot. The judgment of the common pleas court is reversed, and this matter is remanded with instructions to reinstate the order of the Ohio Liquor Control Commission.

Judgment reversed
and remanded with instructions.

LAZARUS and KLATT, JJ., concur.