OPINION
{¶ 1} Appellant, FOE Aerie 2238, Inc., appeals from a judgment of the Franklin County Court of Common Pleas, which affirmed an order of the Ohio Liquor Control Commission ("commission") that ordered a $10,000 forfeiture or, in the alternative, a 50-day suspension. Because the common pleas court did not abuse its discretion in affirming the commission's order, we affirm.
 {¶ 2} Appellant possesses a D-4 liquor permit,[1] which permits the sale of beverage alcohol to club members for on-premises consumption. See, generally, R.C. 4303.17 (D-4 liquor permit).
 {¶ 3} According to an investigative report and the facts contained therein, to which appellant and the Ohio Department of Liquor Control stipulated,[2] on August 5, 2001, in response to a complaint, Agent Kenneth Van Horn and Agent Jeffery Yarian of the Ohio Department of Public Safety, Investigative Unit, visited the liquor permit holder's premises. The agents entered the premises through an unlocked door and approached the on-duty barmaid, Georgia Wilborn. Agents Van Horn and Yarian identified themselves and advised Wilborn of the complaint and need for an inspection.
 {¶ 4} William Hovatter, a trustee, approached the agents. Hovatter informed the agents he would call William Alexander, the trustee that handles tip tickets,[3] to come to the premises to answer the agents' questions.
 {¶ 5} The agents then conducted an inspection and found, in a plastic bin on the back bar, numerous intact tip tickets labeled "357," monies, numerous tip ticket inventory sheets, and one tip ticket pay-off schedule. Under the front bar, agents found sign-up sheets for daily, weekly, and monthly drawings that contained names of individuals, and one envelope containing monies for the daily drawing. Agent Van Horn confiscated the items that were found in the plastic bin on the back bar and under the front bar. According to a Department of Public Safety custody document, $116 in currency was recovered from tip tickets, and $11 in currency was recovered from the daily drawing.
 {¶ 6} In response to a query by Agent Van Horn about the cost to enter daily, weekly, and monthly drawings, William Alexander stated that "`[t]he weekly and monthly costs $1.00 with a $500 cap, and the daily costs $.25 with a $100 cap.'" Agent Van Horn also queried Alexander about the daily, weekly, and monthly pay-outs. According to Alexander, if a winner was not present during a drawing, the winner would only receive one-half of the cash pay-out amount.
 {¶ 7} Additionally, Agent Van Horn also queried Alexander about the source of the tip tickets. In response, Alexander stated, "`Jackson gave them to me.'" Alexander also indicated the tip tickets benefited St. Joseph's Millikite Church and produced a certificate labeled "St. Joseph's Millikite Church"; however, Alexander was not able to produce a copy of the charity's IRS tax exempt certificate. Furthermore, Alexander was not able to produce a list of winners or a list of volunteers. According to Alexander, winners were paid in cash or in additional tip tickets. Moreover, according to Alexander, because the pay-out amounts were less than $100, appellant was not required to maintain a list of winners. However, Agent Van Horn advised Alexander that the pay-out list indicated there was a $100 pay-out, thereby contradicting Alexander's contention that pay-out amounts were less than $100.
 {¶ 8} A violation notice containing three alleged violations was submitted to Alexander, along with other documentation. Safekeeping of the confiscated evidence was also arranged.
 {¶ 9} On April 2, 2002, the commission mailed a notice of hearing, in which the commission alleged the following:
Violation #1: On or about August 5, 2001, you and or your agent and/or employee(s), WILLIAM HOVATTER and/or WILLIAM ALEXNADER [sic], and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, TIP TICKETS, in violation of Regulation 4301:1-53, Ohio Admin. Code.
Violation #2: On or about August 5, 2001, you and or your agent and/or employee(s), WILLIAM HOVATTER and/or WILLIAM ALEXNADER [sic], and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to wit, DAILY/WEEKLY DRAWINGS, in violation of Regulation4301:1-1-53, Ohio Admin. Code.
 {¶ 10} On May 2, 2002, the commission conducted a hearing at which both appellant and the Ohio Department of Liquor Control were represented by counsel. At the hearing, an assistant attorney general, who represented the Ohio Department of Liquor Control, moved for dismissal of violation No. 2. Documentary evidence was introduced at the hearing; however, no witness testimony was offered.
 {¶ 11} On May 14, 2002, the commission mailed an order, wherein the commission found appellant violated violation No. 1 as stated in the notice of hearing. Based upon the assistant attorney general's motion, the commission in its order dismissed violation No. 2 as stated in the notice of hearing. Additionally, in its order, the commission ordered appellant to pay a forfeiture of $10,000 or, alternatively, to serve a 50-day suspension of its liquor permit.
 {¶ 12} Appellant timely appealed to the Franklin County Court of Common Pleas. Upon appellant's motion, in an agreed entry, the common pleas court stayed execution of the commission's order. On May 1, 2003, finding the commission's order was supported by reliable, probative, and substantial evidence, the common pleas court affirmed the commission's order.
 {¶ 13} Appellant timely appeals and assigns a single assignment of error:
The Franklin County Common Pleas Court erred when it affirmed the order of the liquor control commission because the order is not supported by reliable, probative and substantial evidence.
 {¶ 14} Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. ofCincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111; see, also, Andrews v. Bd. of Liquor Control (1955),164 Ohio St. 275, 280.
 {¶ 15} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'"Lies v. Ohio Veterinary Med. Bd. (1981), 2 Ohio App.3d 204,207, quoting Andrews, at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Conrad, supra, at 111.
 {¶ 16} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Ponsv. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, rehearing denied, 67 Ohio St.3d 1439. In Pons, the Ohio Supreme Court noted:
* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id.
 {¶ 17} An appellate court does, however, have plenary review of purely legal questions. Steinfels v. Ohio Dept. of Commerce,Div. of Securities (1998), 129 Ohio App.3d 800, 803, appeal not allowed (1999), 84 Ohio St.3d 1488; McGee v. Ohio State Bd. ofPsychology (1993), 82 Ohio App.3d 301, 305, citing Univ. Hosp.,Univ. of Cincinnati College of Medicine v. State Emp. RelationsBd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus, rehearing denied, 63 Ohio St.3d 1459, and In re Raymundo
(1990), 67 Ohio App.3d 262, 265, jurisdictional motion overruled,53 Ohio St.3d 718.
 {¶ 18} According to Ohio Adm. Code 4301:1-1-53(B):
No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01
of the Revised Code.
See, also, former R.C. 2915.01(F)(2), in effect at all times pertinent to the proceedings ("gambling device" means "[a] ticket, token, or other device representing a chance, share, or interest in a scheme of chance, except a charitable bingo game, or evidencing a bet"); former R.C. 2915.01(F)(4), in effect at all times pertinent to the proceedings ("gambling device" means "[a]ny equipment, device, apparatus, or paraphernalia specially designed for gambling purposes"). See, also, former R.C.2915.01(C), in effect at all times pertinent to the proceedings ("scheme of chance" means "a lottery, numbers game, pool, or other scheme in which a participant gives a valuable consideration for a chance to win a prize").
 {¶ 19} Previously, this court has found that "[b]ecause a tip ticket represents a chance in a scheme in which a participant gives valuable consideration for a chance to win a prize, a tip ticket is a `gambling device' pursuant to [former] R.C.2915.01(F)(2) and [former] 2915.01(C), and therefore also under Ohio Adm. Code 4301:1-1-53(B)." Big Bob's, Inc., v. Ohio LiquorControl Comm., 151 Ohio App.3d 498, 2003-Ohio-418, at ¶ 18. See, also, Weller v. Ohio Liquor Control Comm., Franklin App. No. 02AP-333, 2002-Ohio-6308, at ¶ 18 (finding "[i]t is undisputed that the tip tickets constitute gambling devices within the meaning of [former] R.C. 2915.01[F][2]"). Accordingly, we find the tip tickets that Agents Van Horn and Yarian recovered from appellant's premises constitute "gambling devices" pursuant to former R.C. 2915.01(F)(2) and former R.C. 2915.01(C), which were then in effect, and therefore also under Ohio Adm. Code4301:1-1-53(B).
 {¶ 20} Nevertheless, "[m]ere possession of a gambling device on a liquor permit premises does not constitute a violation of Ohio Adm. Code 4301:1-1-53(B)." VFW Post 8586 v. Ohio LiquorControl Comm. (1998), 83 Ohio St.3d 79, paragraph one of the syllabus. "To find a violation of Ohio Adm. Code 4301:1-1-53(B), the Liquor Control Commission must receive evidence tending to prove the same elements that are required to sustain a criminal conviction of one of the gambling offenses listed in R.C.2915.01(G)." Id. at paragraph two of the syllabus. Furthermore, unlike a criminal conviction, a violation of Ohio Adm. Code4301:1-1-53(B) only needs to be supported by a preponderance of the evidence. Id. at 81. Moreover, there is no requirement that a violation of Ohio Adm. Code 4301:1-1-53(B) be proved by direct evidence. Id. at 82. The commission may draw reasonable inferences based upon the evidence before it. Id.
 {¶ 21} Pursuant to former R.C. 2915.01(G)(1), in effect at all times pertinent to the proceedings, a gambling offense included a violation of former R.C. 2915.02. Former R.C.2915.02(A), in effect at all times pertinent to the proceedings, provided:
No person shall do any of the following:
* * *
(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit;
* * *
(5) With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device.
See, also, former R.C. 2915.01(E), in effect at all times pertinent to the proceedings ("`[s]cheme or game of chance conducted for profit' means any scheme or game of chance designed to produce income for the person who conducts or operates the scheme or game of chance, but does not include a charitable bingo game"). See, also, Loom Lodge 2156 Northfield v. Ohio LiquorControl Comm., Franklin App. No. 02AP-667, 2003-Ohio-38, at ¶ 14 (concluding that actual profit need not be shown to find a violation of Ohio Adm. Code 4301:1-1-53; instead, profit element can be established by proof that a gambling device produced income for permit holder).
 {¶ 22} Here, the investigative report provides evidence upon which the commission reasonably could rely to find appellant violated Ohio Adm. Code 4301:1-1-53 by deriving income from the tip ticket operation conducted on the premises.
 {¶ 23} According to the investigative report, agents seized monies along with intact tip tickets from a plastic bin on the back bar. Given that these monies and intact tip tickets were recovered from the same plastic bin on the back bar, and other monies associated with the daily drawing were segregated from the intact tip tickets and the monies in the plastic bin, the commission reasonably could infer the recovered monies from the plastic bin were associated with tip ticket sales.
 {¶ 24} Furthermore, because presumably the purpose of the tip ticket operation was to realize a financial gain for a charity, St. Joseph's Millikite Church, the commission reasonably could therefore infer appellant was deriving income from tip ticket sales. For the commission to assume otherwise, namely that the tip ticket operation did not realize a financial gain for the charity or that the tip ticket operation incurred a financial loss for the charity, would achieve an illogical result.
 {¶ 25} Therefore, based upon the evidence of seized monies along with intact tip tickets from the same plastic bin on the back bar, and by a preponderance of this evidence, the commission reasonably could infer that appellant violated former R.C.2915.02(A)(2) and (5), and thereby violated Ohio Adm. Code4301:1-1-53. See, also, VFW Post 8586, at 82 (finding there is no requirement that a violation of Ohio Adm. Code 4301:1-1-53[B] be proved by direct evidence; the commission may draw reasonable inferences based upon the evidence before it).
 {¶ 26} Moreover, although giving all of the money or assets received from a tip ticket operation to a charity after prizes have been paid may legitimize a tip ticket operation under certain instances, see former R.C. 2915.02(D), in this case there is reliable, probative, and substantial evidence to support a finding that St. Joseph's Millikite Church may not have been a qualifying charity. See Investigative Report, at 2 (William Alexander was unable to provide a copy of IRS tax exempt certificate or a volunteers list to agents); Tr. 5 (in an unsworn statement at the hearing, appellant's counsel stating "[c]ommissioners, the investigator's report does indicate that there was a charity involved in that situation, although as the Commission is probably aware, that charity is under investigation at the present time"). See, also, Hurt v. State Liquor ControlComm. (Nov. 26, 1997), Montgomery App. No. 16232, dismissed, appeal not allowed (1998), 81 Ohio St.3d 1467 ("[a]s a general matter, we agree * * * that the burden of proof under the charitable exception lies with the party charged under R.C.2915.02"); Ohio Adm. Code 4301:1-1-53(D) (stating that Ohio Adm. Code 4301:1-1-53 shall not be construed to prohibit a game or contest conducted in accordance with R.C. 2915.02[D] provided the game or contest strictly complies with R.C. 2915.02[D]). See, also, Big Bob's, supra, at ¶ 31 ("[appellant] was best situated to provide evidence relating to its compliance with [former] R.C.2915.02(D), including evidence that it gave all profits to a qualifying charity. [Appellant], however, failed to carry that burden").
 {¶ 27} Appellant relies upon FOE Aerie 2168 Logan v. LiquorControl Comm. (Jan. 14, 1999), Hocking App. No. 98CA0009 to support its contention the common pleas court abused its discretion. However, we find FOE Aerie 2168 Logan is factually distinguishable.
 {¶ 28} In FOE Aerie 2168 Logan, after receiving an anonymous tip and obtaining a search warrant, liquor agents searched the permit holder's premises and found several forms of tip tickets and cash totaling approximately $900. Agents did not observe any purchase of tip tickets nor did the permit holder's agent attempt to sell tip tickets to the agents. Based upon this evidence, the commission found a violation of Ohio Adm. Code4301:1-1-53 and suspended the permit holder's permit for 30 days. The common pleas court affirmed the commission's order. On appeal, finding the common pleas court abused its discretion, the Fourth District Court of Appeals reversed.
 {¶ 29} In reaching its decision, the appellate court stated:
From these facts, we may infer that the Aerie received money for the tickets. However, the record contains no evidence from which we could infer that the Aerie had a scheme or plan to sell tip tickets for profit, such as odd sheets, pay-off schedules or a stipulation that the losing tickets outnumbered the winning tickets.
 {¶ 30} Here, unlike FOE Aerie 2168 Logan, a tip ticket pay-off schedule was recovered from the liquor permit holder's premises. Investigative Report, at 2. Moreover, here, unlike FOEAerie 2168 Logan, appellant suggests money received from the tip ticket operation after prizes had been paid was given to an allegedly qualifying charity under former R.C. 2915.02, although no corroborating documentation concerning the charity's tax exempt status was proffered into evidence. Thus, the circumstances of this case are factually distinguishable fromFOE Aerie 2168 Logan. See, also, Hurt, supra (as a general matter, the burden of proof under the charitable exception lies with the party charged under R.C. 2915.02). Therefore, appellant's reliance upon FOE Aerie 2168 Logan is not persuasive.
 {¶ 31} In sum, the record contains reliable, probative, and substantial evidence of the elements necessary to sustain a criminal conviction under former R.C. 2915.02(A)(2), thereby supporting the commission's finding that appellant violated Ohio Adm. Code 4301:1-1-53(B). See VFW Post 8586, at paragraph two of the syllabus. Furthermore, because under R.C. 4301.25(A) the commission may suspend or revoke a liquor permit for a violation of R.C. Chapter 4301 or 4303, or any commission rule, and because under R.C. 4301.252 the commission may permit payment of a forfeiture in lieu of suspension, the commission had authority to suspend appellant's liquor permit and to allow appellant to elect to pay a forfeiture. See Big Bob's, supra, at ¶ 33.
 {¶ 32} Accordingly, for the foregoing reasons, the common pleas court did not abuse its discretion when it found the commission's order was supported by reliable, probative, and substantial evidence and was in accordance with law. Therefore, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Sadler, JJ., concur.
[1] In its brief before the common pleas court, the commission claimed appellant also possessed a D-6 liquor permit in addition to a D-4 liquor permit. See, generally, R.C. 4303.182 (D-6 liquor permit). However, according to an enforcement investigative report, appellant only possessed a D-4 liquor permit. Furthermore, in its decision, the common pleas court also found that appellant only possessed a D-4 liquor permit.
[2] See May 2, 2002, hearing transcript, at 4. At the hearing, there was the following exchange:
"MR. MASTRANGELO [Assistant Attorney General]: Mr. Gearhiser [appellant's attorney], you are denying the violation but stipulating to the report, is that correct?
"MR. GEARHISER: That is correct, Mr. Mastrangelo."
[3] "Tip tickets are games comparable to instant winner games conducted by the Ohio Lottery Commission. * * * A tip ticket purchaser opens the ticket to determine whether it reveals a symbol indicating that he or she has won money." Amvets Post1983 Schneider Hume, Inc. v. Ohio Liquor Control Comm. (Feb. 13, 2001), Franklin App. No. 00AP-480, appeal not allowed,92 Ohio St.3d 1414.