OPINION
{¶ 1} Acker Moore Memorial Post, appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court affirmed two orders of the Ohio State Liquor Control Commission ("commission"), appellee, finding appellant had violated Ohio Adm. Code 4301:1-1-49 and4301:1-1-53.
 {¶ 2} Appellant is the liquor permit holder for an establishment located in Columbus, Ohio, and holds a D4 permit, which authorizes it to sell alcoholic beverages to its members Monday through Saturday. According to the Ohio Department of Public Safety ("ODPS") investigative report, on June 15, 2003, a Sunday, ODPS agents visited appellant's establishment and found the door locked. One agent observed through the front door window patrons consuming what the report referred to as "mixed drinks." After pressing a buzzer, the agents were admitted, at which point they identified themselves. The agents took samples of the "mixed drinks" and cited appellant for violating Ohio Adm. Code 4301:1-1-49.
 {¶ 3} According to a second ODPS investigative report, on June 21, 2003, two ODPS agents visited appellant's establishment. The front door was locked again, and the agents were admitted after pressing the buzzer. The agents discovered a bag of intact tip tickets behind the bar, and two more bags of tickets were found in an office. The bartender told the agents that money from the tip tickets had been deposited in the bank, no tickets had been sold that day, the tickets cost $1, and some of the money earned from the tip tickets went to charity. The agents cited appellant for violating Ohio Adm. Code 4301:1-1-53.
 {¶ 4} On October 9, 2003, the two cases were heard by the commission. After the hearing, at which the parties stipulated to the admission of the investigative reports and the facts therein, the commission issued two separate orders. Each order ordered appellant's license be suspended for 200 days, with the suspensions to run concurrently with each other. With regard to the Ohio Adm. Code 4301:1-1-49 case, the commission permitted payment of a forfeiture of $20,000 in lieu of suspension. Appellant appealed the commission's orders to the common pleas court, which affirmed the orders on February 23, 2005. Appellant appeals the judgment of the trial court, asserting the following three assignments of error:
I. THE COURT BELOW ERRED WHEN IT AFFIRMED THE ORDER OF THE LIQUOR CONTROL COMMISSION WHICH FOUND THAT APPELLANT VIOLATED LIQUOR CONTROL COMMISSION REGULATION 4301:1-1-49 BECAUSE THE ORDER WAS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW.
II. THE COURT BELOW ERRED WHEN IT FOUND THAT THE ORDER OF THE LIQUOR CONTROL COMMISSION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE.
III. THE COURT BELOW ERRED WHEN IT REFUSED TO MODIFY THE ORDER OF THE LIQUOR CONTROL COMMISSION OR REMAND THE CASE TO THE LIQUOR CONTROL COMMISSION FOR FURTHER PROCEEDINGS.
 {¶ 5} Appellant argues in its first assignment of error that the trial court erred in finding that the commission's order addressing Ohio Adm. Code 4301:1-1-49 was supported by reliable, probative, and substantial evidence. Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record and determine whether the agency's order is "supported by reliable, probative, and substantial evidence and is in accordance with law." R.C.119.12. "Reliable" evidence is evidence that is dependable and may be confidently trusted. Our Place, Inc. v. Ohio Liquor Control Comm.
(1992), 63 Ohio St.3d 570, 571. In order to be reliable, there must be a reasonable probability that the evidence is true. Id. "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. Id. "Substantial" evidence is evidence with some weight; it must have importance and value. Id.
 {¶ 6} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Lies v. Veterinary Medical Bd.
(1981), 2 Ohio App.3d 204, 207, citing Andrews v. Bd. of LiquorControl (1955), 164 Ohio St. 275, 280. Even though the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, the findings of the agency are not conclusive.Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111.
 {¶ 7} An appellate court's standard of review in an administrative appeal is more limited than that of a common pleas court. Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. It is not the function of the appellate court to examine the evidence. Id. The appellate court is to determine only if the trial court has abused its discretion. Id. Abuse of discretion is not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id. Absent an abuse of discretion on the part of the trial court, an appellate court may not substitute its judgment for that of an administrative agency or a trial court. Id. Nonetheless, an appellate court does have plenary review of purely legal questions in an administrative appeal. Big Bob's, Inc.v. Ohio Liquor Control Comm., 151 Ohio App.3d 498, 2003-Ohio-418, at ¶ 15. Accordingly, we must also determine whether the common pleas court's decision is in accordance with law.
 {¶ 8} In the present case, the commission alleged that appellant violated Ohio Adm. Code 4301:1-1-49, which provides, in pertinent part:
No intoxicating liquor may be sold by, delivered, or be permitted to be consumed on the premises of any permit holder during the hours between one a.m. on Sunday and Sunday midnight, except on the premises of a D-3A, D-5, D-5A, D-5B, D-5C, D-5D, D-5E, D-5F, D-5I, D-5J, D7, or an A-1-A permit. * * *
 {¶ 9} Appellant argues that the commission and the trial court erred because the stipulated facts failed to prove all of the elements necessary for a violation of Ohio Adm. Code 4301:1-1-49. Specifically, appellant asserts that the stipulated report in question failed to establish that the "mixed drinks" discovered at the premises contained "intoxicating liquor," as required by Ohio Adm. Code 4301:1-1-49. Appellant points out that the stipulated report contains no chemical analysis of the confiscated drinks, there is no evidence that a chemical analysis was ever conducted, and there is no evidence that the "mixed drinks" contained alcohol. In support of its argument, appellant cites this court's decision in Easy Brothers v. Liquor Control Comm., Franklin App. No. 03AP-908, 2004-Ohio-3378.
 {¶ 10} The commission counters that the investigative report provided sufficient reliable, probative, and substantial evidence of a violation of Ohio Adm. Code 4301:1-1-49 because appellant stipulated to the allegation in the report that patrons possessed "mixed drinks." The stipulated report provided the following, in pertinent part:
On Sunday, June 15, 2003 * * * Agent R. Robinson looked through the front door window and observed patrons at the bar possessing and consuming what appeared to be mixed drinks. * * * Agents A. Johnson and R. Robinson observed six patrons sitting at the bar[;] four were in possession of mixed drinks. Agents A. Johnson and R. Robinson * * * confiscated the aforementioned mixed drinks * * *. Agent A. Johnson secured the mixed drinks and poured them all into clean, [separate] specimen bottles, sealed, and [labeled] them as evidence.
 {¶ 11} In order for there to be a violation of Ohio Adm. Code4301:1-1-49 in the present case, the commission must prove that appellant permitted intoxicating liquor to be consumed on the premises on a Sunday. R.C. 4301.01(A)(1) defines "intoxicating liquor" as including:
* * * [A]ll liquids and compounds, other than beer, containing one-half of one per cent or more of alcohol by volume which are fit to use for beverage purposes, from whatever source and by whatever process produced, by whatever name called, and whether they are medicated, proprietary, or patented. "Intoxicating liquor" and "liquor" include wine even if it contains less than four per cent of alcohol by volume, mixed beverages even if they contain less than four per cent of alcohol by volume, cider, alcohol, and all solids and confections which contain any alcohol.
Thus, "intoxicating liquor" includes "mixed beverages." R.C.4301.01(B)(4) provides the following definition of "mixed beverages":
* * * [B]ottled and prepared cordials, cocktails, and highballs, are products obtained by mixing any type of whiskey, neutral spirits, brandy, gin, or other distilled spirits with, or over, carbonated or plain water, pure juices from flowers and plants, and other flavoring materials. The completed product shall contain not less than one-half of one per cent of alcohol by volume and not more than twenty-one per cent of alcohol by volume.
 {¶ 12} In the present case, appellant stipulated to the investigative report that indicated patrons were found to be in possession of "mixed drinks." Though the Ohio Revised Code contains no definition for "mixed drinks," we believe the term is equivalent to the statutorily defined term "mixed beverages." The commission has before used the term "mixed drink" in its report to refer to an intoxicating liquor, and this court has found such reference sufficient to prove an intoxicating liquor was served. See Skiffey v. Ohio Liquor Control Comm., Franklin App. No. 02AP-629, 2003-Ohio-347, at ¶ 7 (evidence in investigative report that the bartender "prepared a mixed drink of Malibu Rum, an intoxicating beverage," constituted sufficient evidence to demonstrate the permit holder violated R.C. 4301.69(A) by furnishing an intoxicating liquor to persons under 21). Webster's Ninth New Collegiate Dictionary (1987) 383, also includes "alcoholic liquor" as one definition of "drink." Therefore, we find appellant's stipulation to serving "mixed drinks" was legally equivalent to a stipulation to serving "mixed beverages" for purposes of Ohio Adm. Code 4301:1-1-49.
 {¶ 13} Appellant claims that a stipulation by a permit holder to serving a "mixed drink" is not equivalent to a stipulation to serving a "mixed beverage," citing this court's decision in Easy Brothers. We disagree. In Easy Brothers, the appellant did not raise the argument raised by appellant in the present case, and neither this court nor the trial court in Easy Brothers addressed whether the term "mixed drink" was equivalent to "mixed beverage." The focus of the analysis in EasyBrothers was the stipulation to "absolute and cranberry" and the lack of evidence that the drink contained the requisite amount of alcohol to constitute a violation. Therefore, we find Easy Brothers inapposite to the present case.
 {¶ 14} Accordingly, appellant's stipulation to serving "mixed drinks" in the case sub judice was sufficient to prove it served "mixed beverages," as defined in R.C. 4301.01(B)(4). As appellant served "mixed beverages," by definition, such beverages contained the requisite amount of alcohol so as to constitute an "intoxicating liquor." Thus, the commission established a violation of Ohio Adm. Code 4301:1-1-49 by proving all of the elements thereof, and we find the trial court did not abuse its discretion by concluding the commission's order was supported by reliable, probative, and substantial evidence, and was in accordance with the law. Appellant's first assignment of error is sustained.
 {¶ 15} Appellant argues in its second assignment of error that the trial court erred in finding that the commission's order that addressed Ohio Adm. Code 4301:1-1-53 was supported by reliable, probative, and substantial evidence. Ohio Adm. Code 4301:1-1-53 provides, in pertinent part:
(B) No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code.
Appellant contends that the commission did not prove all of the elements of a violation of this rule because the agents did not witness anyone playing or purchasing the tip tickets, there was no evidence of any money exchanging hands, and the agents did not purchase any tip tickets or receive a payout. We disagree.
 {¶ 16} Pursuant to Ohio Adm. Code 4301:1-1-53(B), the commission was required to prove appellant: (1) had, kept or possessed (2) a gambling device (3) on the permit premises (4) that was or had been used for a gambling offense. The first and third requirements were clearly satisfied in the present case, given the stipulated report indicated that the commission's agents discovered intact tip tickets behind the bar and in an office on the permit premises. The second element was also satisfied here. This court has held on numerous occasions that, because a tip ticket represents a scheme of chance in which a participant gives valuable consideration for a chance to win a prize, a tip ticket is a "gambling device" pursuant to R.C. 2915.01(F), and, therefore, also under Ohio Adm. Code 4301:1-1-53(B). See FOE Aerie 2238, Inc. v. Ohio LiquorControl Comm., Franklin App. No. 03AP-540, 2004-Ohio-244, at ¶ 19, quoting Big Bob's, Inc., at ¶ 18.
 {¶ 17} With regard to the fourth requirement, it is well-established that the "[m]ere possession of a gambling device on a liquor permit premises does not constitute a violation of Ohio Adm. Code 4301:1-1-53(B)." VFW Post 8586 v. Ohio Liquor Control Comm. (1998),83 Ohio St.3d 79, paragraph one of the syllabus. "To find a violation of Ohio Adm. Code 4301:1-1-53(B), the Liquor Control Commission must receive evidence tending to prove the same elements that are required to sustain a criminal conviction of one of the gambling offenses listed in R.C. 2915.01(G)." Id. at paragraph two of the syllabus. Unlike a criminal conviction, however, a violation of Ohio Adm. Code 4301:1-1-53(B) only needs to be supported by a preponderance of the evidence. Id. at 81. Moreover, there is no requirement that a violation of Ohio Adm. Code4301:1-1-53(B) be proved by direct evidence. Id. at 82. The commission may draw reasonable inferences based upon the evidence before it. Id.
 {¶ 18} R.C. 2915.01(G) indicates that a "gambling offense" includes a violation of R.C. 2915.02. R.C. 2915.02(A) provides, in pertinent part:
(A) No person shall do any of the following:
* * *
(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit;
* * *
(5) With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device.
 {¶ 19} R.C. 2915.01(E) indicates that a "scheme or game of chance conducted for profit" means any scheme or game of chance designed to produce income for the person who conducts or operates the scheme or game of chance. Therefore, actual profit need not be shown to find a violation of Ohio Adm. Code 4301:1-1-53; instead, the profit element can be established by proof that a gambling device produced income for the permit holder. Loom Lodge 2156 Northfield v. Ohio Liquor Control Comm.,
Franklin App. No. 02AP-667, 2003-Ohio-38, at ¶ 14.
 {¶ 20} In the present case, there was evidence to support a finding that the tip tickets produced income for appellant. The stipulated investigative report indicates that one of the agents asked appellant's bartender: "`Where is the money for the tickets?'" The bartender responded: "`The money was deposited at the bank last night, and I did not sell any tickets since[.]'" he agent then asked the bartender: "`How much does it cost for the tickets?'" The bartender replied: "`One dollar a ticket[.]'" The agent also asked the bartender: "`How many tickets do you sell a night?'" The bartender responded: "`the bartender who is scheduled usually sells one bag of tickets per shift[.]'" The bartender further explained: "`[W]e donate some of the money to some charities[,]'" and stated the bar had been selling tip tickets for the three years she had been working at the bar. This evidence clearly establishes that appellant derived income from the sale of tip tickets. Therefore, based upon the statements of the bartender included in the stipulated investigative report and the intact tip tickets seized, the commission had reliable, probative, and substantial evidence demonstrating appellant violated R.C. 2915.02(A)(2) and (5), and thereby violated Ohio Adm. Code4301:1-1-53. Appellant's second assignment of error is overruled.
 {¶ 21} Appellant argues in its third assignment of error that the trial court erred when it refused to modify the order of the commission or remand the case. Specifically, appellant maintains that, if this court finds the record supports only one of the violations found by the commission, then the court should modify the penalty imposed by the commission or remand the case to the commission. As we have found the record supports both violations, this assignment of error is moot.
 {¶ 22} Accordingly, appellant's first and second assignments of error are overruled, its third assignment of error is moot, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Klatt and McGrath, JJ., concur.