[Cite as *Parrott v. State Med. Bd. of Ohio*, 2016-Ohio-4635.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Cassandra Rose Parrott, D.O., | : | |
| Appellant-Appellant, | : | No. 15AP-963 |
| | | (C.P.C. No. 14CV-9912) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| State Medical Board of Ohio, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on June 28, 2016

**On brief:** *Sindell and Sindell, LLP, Steven A. Sindell,* and *Rachel Sindell,* for appellant. **Argued:** *Steven A. Sindell.*

**On brief:** *Michael DeWine,* Attorney General, *Kyle Wilcox,* and *James T. Wakley,* for appellee. **Argued:** *James T. Wakley.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1}   Appellant, Cassandra Rose Parrott, D.O., appeals from a decision and entry of the Franklin County Court of Common Pleas affirming the order of appellee, State Medical Board of Ohio ("the board"), suspending Parrott's training certificate to practice osteopathic medicine and surgery for an indefinite period of time but not less than 90 days.  For the following reasons, we affirm.

I.  Facts and Procedural History

{¶ 2}   Dr. Parrott graduated from the Midwestern University – Arizona College of Osteopathic Medicine in 2012.  Following an internship in California, Dr. Parrott applied for and was accepted into the radiology residency program at the Cleveland Clinic.  Before starting her residency program, Dr. Parrott obtained a training certificate from the board.

{¶ 3}   When she applied for the training certificate, Dr. Parrott disclosed she had two convictions for driving under the influence of alcohol in Massachusetts.  The board sent Dr. Parrott a set of interrogatories requesting she provide additional information related to her use of drugs and alcohol.  In her response, Dr. Parrott indicated she continued to consume alcohol on occasion.  Subsequently, the board ordered Dr. Parrott to submit to an evaluation by Richard Whitney, M.D., at Shepherd Hill, a drug and alcohol treatment facility located in Newark, Ohio.

{¶ 4}   From May 19 to 22, 2014, Dr. Whitney and the staff at Shepherd Hill conducted an evaluation of Dr. Parrott.  By letter dated May 22, 2014, Dr. Whitney stated it was his professional opinion that Dr. Parrott was diagnosed with alcohol dependence and was "unable to practice medicine at acceptable and prevailing standards of care."  Dr. Whitney recommended Dr. Parrott enter treatment immediately.

{¶ 5}   Based on Dr. Whitney's report, the board issued on June 11, 2014 an order summarily suspending Dr. Parrott's training certificate pursuant to R.C. 4731.22(G) and notified Dr. Parrott she was entitled to a hearing.  Dr. Parrott expressed her intent to exercise her right to a hearing in a June 23, 2014 letter.

{¶ 6}   On July 31 and August 1, 2014, the board's chief hearing examiner conducted a hearing on Dr. Parrott's training certificate suspension.  Dr. Parrott testified she began drinking and using marijuana when she was 15 years old.  In her teenage years, Dr. Parrott also experimented with cocaine, ecstasy, and psychedelic mushrooms.  Dr. Parrott testified she stopped using illegal drugs after high school but that her alcohol consumption increased when she began college.  She said she would sometimes binge drink, pass out, or have memory black outs from drinking to excess.  While in college, Dr. Parrott said she stopped drinking for a period of two years because she felt she was too "involved in the party scene" and she wanted to focus on her academic aspirations.  (Tr. at 45.)

{¶ 7}   After graduating college, Dr. Parrott testified she lived in Massachusetts and resumed a pattern of binge drinking.  During that time, Dr. Parrott said she would drink anywhere from 3 to 12 drinks per evening.  In January 2006, Dr. Parrott received a citation for driving under the influence of alcohol, and her blood alcohol concentration was .26.  The sentencing court placed Dr. Parrott in a first offender driver alcohol

education program.  Subsequently, in December 2007, Dr. Parrott was again arrested for driving under the influence of alcohol, this time with a blood alcohol concentration of .25. Dr. Parrott testified she had consumed approximately 12 12-ounce beers that evening. Following that arrest, the sentencing court required Dr. Parrott to complete a 14-day inpatient alcohol treatment program and serve two years' probation.

{¶ 8}  Dr. Parrott attended the inpatient alcohol treatment program at Middlesex DUIL in Tewksbury, Massachusetts in March 2008.  Additionally, she attended the Wayside Youth and Family Support Network outpatient program in Milford, Massachusetts from January to July 2008.  Both programs diagnosed Dr. Parrott as having alcohol and cannabis dependence.  However, Dr. Parrott said no one ever told her she was diagnosed alcohol dependent or that she should abstain completely from alcohol use.  Dr. Parrott testified she then stopped consuming alcohol for several years.

{¶ 9}  After Dr. Parrott applied for her training certificate and disclosed her history of arrests for driving under the influence of alcohol, the board sent Dr. Parrott a set of interrogatories to complete.  One of the questions posed to Dr. Parrott was whether she currently consumes alcohol and, if so, with what frequency and in what quantity. Dr. Parrott responded that in 2013 and 2014, she would drink one glass of wine or beer with dinner, one or two times per month.

{¶ 10} As a result of that response, the board ordered Dr. Parrott to complete a 72-hour evaluation with Dr. Whitney at Shepherd Hill in May 2014.  Dr. Whitney recommended Dr. Parrott complete a 28-day inpatient treatment program.  In July 2014, Dr. Parrott sought a second evaluation from Gregory Collins, M.D., at the Cleveland Clinic.  Dr. Collins also recommended that Dr. Parrott complete a 28-day inpatient treatment program and a course of 104 outpatient sessions with the Cleveland Clinic. Despite both of those evaluations, Dr. Parrott testified she does not agree she should attend an inpatient treatment program, and she testified she does not believe she needs any further evaluation or treatment.  She said she is willing to accept the diagnosis of alcohol dependence and will be "compliant" with what the treating physicians suggest, but she said in her view she only needs "monitoring" and not the inpatient treatment that two different doctors recommended.  (Tr. at 490, 491.)

{¶ 11} Drs. Whitney and Collins both testified at the hearing. Both opined that Dr. Parrott is unable to safely practice medicine in accordance with the standards set forth by the legislature and the board.

{¶ 12} Following the hearing, the hearing examiner issued an August 15, 2014 report and recommendation concluding Dr. Parrott was in violation of R.C. 4731.22(B)(26) and was unable to practice medicine according to the acceptable and prevailing standards of care. The hearing examiner recommended an indefinite suspension of Dr. Parrott's training certificate pursuant to R.C. 4731.22(G). At its September 10, 2014 meeting, the board heard argument from both parties and then voted to adopt the hearing examiner's report and recommendation. By order dated September 10, 2014, the board adopted the hearing examiner's findings of facts and conclusions of law and suspended Dr. Parrott's training certificate for an indefinite period of time, but not less than 90 days, and ordered Dr. Parrott to comply with the terms and conditions of interim monitoring as detailed in its order.

{¶ 13} Dr. Parrott appealed the board's order to the Franklin County Court of Common Pleas. In a September 30, 2015 decision and entry, the common pleas court affirmed the board's order. Dr. Parrott timely appeals.

## II. Assignment of Error

{¶ 14} Dr. Parrott assigns the following error for our review:

> State Agencies such as the State Medical Board of Ohio are prohibited by the Ohio and Federal Constitutions and commit an abuse of discretion by adopting and enforcing rules affecting physician licenses and certificates when such rules violate, exceed, change and/or conflict with statutes enacted by the Ohio Legislature.

## III. Standard of Review

{¶ 15} In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980). The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must

appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. On questions of law, the common pleas court conducts a de novo review, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), quoting R.C. 119.12.

{¶ 16} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). On review of purely legal questions, however, an appellate court has de novo review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV.  Analysis

{¶ 17} In her sole assignment of error, Dr. Parrott argues the common pleas court abused its discretion in concluding reliable, probative, and substantial evidence supports the board's order suspending her training certificate. Additionally, Dr. Parrott argues the board's order is not in accordance with law. More specifically, Dr. Parrott asserts the board exceeded its statutory rulemaking authority when it enacted Ohio Adm.Code 4731-16-01(A). We address each of these arguments in turn.

### A.  Reliable, Probative, and Substantial Evidence

{¶ 18} Dr. Parrott first argues the common pleas court abused its discretion in determining reliable, probative, and substantial evidence supports the board's order. In its order suspending Dr. Parrott's training certificate, the board concluded Dr. Parrott was in violation of R.C. 4731.22(B)(26). In pertinent part, R.C. 4731.22(B) provides:

> The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend an individual's certificate to practice, refuse to issue a certificate to an individual, refuse to renew a certificate, refuse to reinstate a certificate, or reprimand or

place on probation the holder of a certificate for one or more of the following reasons:

* * *

(26) Impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice.

{¶ 19} As the board notes, the evidence before the board was largely not in dispute. Dr. Parrott admitted she had a history of severe alcohol abuse, including two arrests for driving while under the influence of alcohol. Dr. Parrott argues, however, that her admitted history of alcohol abuse was not enough evidence to warrant discipline by the Board.

{¶ 20} " 'When reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession.' " *Weiss v. State Med. Bd.*, 10th Dist. No. 13AP-281, 2013-Ohio-4215, ¶ 24, quoting *Pons* at syllabus. In its decision-making, the board may rely on its own knowledge and expertise to determine whether a physician's conduct falls below the minimal standard of care. *Ridgeway v. State Med. Bd.*, 10th Dist. No. 07AP-446, 2008-Ohio-1373, ¶ 46, citing *Walker v. State Med. Bd.*, 10th Dist. No. 01AP-791 (Feb. 21, 2002).

{¶ 21} Here, the board relied not only on its own expertise but also on the opinions of two different expert physicians, one of whom Dr. Parrott called to testify on her behalf. Both Drs. Whitney and Collins opined that Dr. Parrott was impaired and unable to safely practice medicine. Dr. Parrott admitted she has resumed drinking despite being diagnosed multiple times as alcohol dependent. Dr. Collins testified that her previous diagnoses and the extent and seriousness of her problem "puts her in a category of ongoing high risk," and she needs additional treatment and monitoring. (Tr. at 269.)

{¶ 22} Despite the opinions of these experts, Dr. Parrott argues that because there was no evidence that she was then-currently impaired, the board did not have the authority to suspend her training certificate. Dr. Parrott relies on a colloquial understanding of impairment rather than the definition of Ohio Adm.Code 4731-16-01(A). However, as this court has noted, "[t]he Board is not required to show evidence of patient

harm, or deficient work performance in order to take disciplinary action" in impairment cases. *Smith v. State Med. Bd.*, 10th Dist. No. 11AP-1005, 2012-Ohio-2472, ¶ 19 (noting it is "entirely appropriate to take prophylactic steps when a licensed physician is impaired"), citing *Ridgeway* at ¶ 20. Additionally, there is no requirement that the board demonstrate Dr. Parrott's alcohol use actually impaired her practice of medicine. *Bennett v. State Med. Bd.*, 10th Dist. No. 10AP-833, 2011-Ohio-3158, ¶ 37 (concluding expert opinion that doctor was impaired because his abuse of alcohol was sufficient to satisfy the definition under Ohio Adm.Code 4731-16-01(A) and rejecting an argument that the board must have evidence of patient harm before taking disciplinary action, instead noting "it is within the Board's province to consider the issue of impairment even in the absence of a specific incident of patient harm").

{¶ 23} Both Drs. Whitney and Collins expressed concern that Dr. Parrott had resumed consuming alcohol despite her diagnoses of alcohol dependence. Dr. Whitney testified that in his entire experience, he could not recall a single patient who had "successfully" resumed drinking in moderation after being diagnosed alcohol dependent. (Tr. at 143.) The testimony of Drs. Whitney and Collins and their accompanying reports provided sufficient reliable, probative, and substantial evidence that Dr. Parrott was incapable of practicing medicine safely.

### B. Rulemaking Authority

{¶ 24} Dr. Parrott also argues the board exceeded its rulemaking authority when it enacted Ohio Adm.Code 4731-16-01(A). A challenge to an administrative agency's rulemaking authority is a question of law, and, therefore, we exercise de novo review. *Vargas v. State Med. Bd.*, 10th Dist. No. 11AP-872, 2012-Ohio-2735, ¶ 8; *Ohio Historical Soc.* at 471.

{¶ 25} "The purpose of administrative rule-making is to facilitate the administrative agency's placing into effect the policy declared by the General Assembly in the statutes to be administered by the agency. In other words, administrative agency rules are an administrative means for the accomplishment of a legislative end." *Nelson v. Mohr*, 10th Dist. No. 13AP-130, 2013-Ohio-4506, ¶ 14, citing *Carroll v. Dept. of Adm. Servs.*, 10 Ohio App.3d 108, 110 (10th Dist.1983). Administrative rules cannot add or subtract from the legislative enactment. *Nelson* at ¶ 14, citing *Cent. Ohio Joint Vocational*

*School Dist. Bd. of Edn. v. Admr., Bur. of Emp. Servs.*, 21 Ohio St.3d 5, 10 (1986). Additionally, administrative rules cannot exceed the rulemaking authority delegated by the General Assembly. *Nelson* at ¶ 14, citing *Sterling Drug, Inc. v. Wickham*, 63 Ohio St.2d 16, 19 (1980).

{¶ 26} Under R.C. 4731.05(A), "[t]he state medical board shall adopt rules in accordance with Chapter 119. of the Revised Code to carry out the purposes of this chapter." The board enacted Ohio Adm.Code 4731-16-01(A) and defined "impairment" as:

> impairment of ability to practice according to acceptable and prevailing standards of care because of habitual or excessive use or abuse of drugs, alcohol, or other substances that impair ability to practice. Impairment includes inability to practice in accordance with such standards, and inability to practice in accordance with such standards without appropriate treatment, monitoring or supervision.

Dr. Parrott argues the board acted impermissibly in using its rulemaking authority to expand the definition of impairment contained in R.C. 4731.22(B)(26).

{¶ 27} While an administrative rule must be reasonable and not in conflict with statutory enactments governing the same subject, an administrative agency may " 'fill[ ] a gap or define[ ] a term in a reasonable way in light of the Legislature's design controls." *Cosby v. Franklin Cty. Dept. of Job & Family Servs.*, 10th Dist. No. 07AP-41, 2007-Ohio-6641, ¶ 38, quoting *Regions Hosp. v. Shalala*, 522 U.S. 448 (1998). Pursuant to its rulemaking authority, the board validly promulgated Ohio Adm.Code 4731-16-01(A) to define "impairment" as used in R.C. 4731.22(B)(26). Contrary to Dr. Parrott's assertion that the language used in R.C. 4731.22(B)(26) is a de facto definition of impairment, the statute does not set forth a separate definition of impairment. Thus, the rule defines a term in a reasonable way that the statute does not otherwise define. Accordingly, the rule does not conflict with the statute, helps to effectuate the General Assembly's policy regarding impaired physicians, and is a reasonable exercise of the board's rulemaking authority.

{¶ 28} To the extent Dr. Parrott argues that the board promulgated a rule that impermissibly requires absolute abstinence from alcohol consumption for those

previously diagnosed alcohol dependent, her argument represents a misinterpretation of the rule. There is nothing in the rule that states a person diagnosed as alcohol dependent cannot ever consume alcohol. Instead, the board evaluated Dr. Parrott's case on an individual basis. It was the expert opinions of Drs. Whitney and Collins that Dr. Parrott could not safely resume the consumption of alcohol given her history and the severity of her problem.

{¶ 29} Additionally, Dr. Parrott argues the board exceeded its rulemaking authority when it enacted Ohio Adm.Code 4731-16-02(B)(2)(a), which provides that evidence "[t]he individual has relapsed during or following treatment" shall constitute "independent proof of impairment and shall support license suspension or denial without the need for an examination." However, we need not address Dr. Parrott's argument in this regard as the board did not suspend Dr. Parrott's license pursuant to independent proof of a relapse as outlined in Ohio Adm.Code 4731-16-02(B)(2)(a). Instead, the board suspended Dr. Parrott's license pursuant to R.C. 4731.22(B)(26) following an examination and diagnosis of alcohol dependence.

{¶ 30} Dr. Parrott also argues for the first time on appeal that the board impermissibly defines the term "sobriety" in Ohio Adm.Code 4731-16-01(E). "It is well settled that a litigant's failure to raise an issue before the trial court waives the litigant's right to raise that issue on appeal." *Moore v. Dept. of Rehab. & Corr.*, 10th Dist. No. 10AP-732, 2011-Ohio-1607, ¶ 22, citing *Gentile v. Ristas*, 160 Ohio App.3d 765, 2005-Ohio-2197, ¶ 74 (10th Dist). Thus, Dr. Parrott waives this issue and we need not address it for the first time on appeal. *Id.*

{¶ 31} Finally, we note the common pleas court correctly determined that any challenge to Dr. Parrott's summary suspension imposed pursuant to R.C. 4731.22(G) is moot because summary suspension ends when the board takes final action. *Ridgeway* at ¶ 12; *Nucklos v. State Med. Bd.,* 10th Dist. No. 08AP-510, 2008-Ohio-5698, ¶ 12.

{¶ 32} In sum, because there was reliable, probative, and substantial evidence supporting the board's order and because the board did not exceed its rulemaking authority in enacting Ohio Adm.Code 4731-16-01(A), we overrule Dr. Parrott's sole assignment of error.

## V.  Disposition

{¶ 33} Based on the foregoing reasons, the common pleas court did not abuse its discretion in affirming the board's order that Dr. Parrott violated R.C. 4731.22(B)(26) as reliable, probative, and substantial evidence supports that order, nor did it err in determining the order is in accordance with law with respect to determining the board did not exceed its rulemaking authority in enacting Ohio Adm.Code 4731-16-01(A).  Having overruled Dr. Parrott's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and SADLER, JJ., concur.

—————————————